635 A.2d 233

COMMONWEALTH of Pennsylvania

v.

**$16,208.38 U.S. CURRENCY SEIZED FROM Issac HOLT a/k/a Isiah Holt**

**Appeal of Isiah HOLT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1993.

Decided Dec. 8, 1993.

442

Stephen K. Urbanski, for appellant.

Peter J. Gardner, Asst. Dist. Atty., for appellee.

Before COLINS and McGINLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Isiah Holt (Holt) appeals from an opinion and order of the Court of Common Pleas of Philadelphia County (trial court) which granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture of property, listed on property receipt No. 274811 (United States currency totaling $16,-208.38), pursuant to 42 Pa.C.S. §§ 6801–6802, commonly known as the Controlled Substances Forfeiture Act (Act), and transferred the same to the Philadelphia District Attorney's Office. We affirm.

The facts giving rise to this forfeiture proceeding are as follows. On May 22, 1990, undercover Philadelphia Police Officer Mary Willis (Officer Willis), in response to numerous complaints that an individual named "Mickey" was selling drugs from his residence at 1215 Christian Street, set up a surveillance of the home. In so doing, Officer Willis observed people walking up to the house, staying a short while, and then leaving. Based upon her observations, Officer Willis went up to the house, at approximately 3:05 p.m., in order to make a controlled purchase of drugs using prerecorded currency. On the steps leading up to the house, Officer Willis encountered an individual, later identified as Louis Duncan (Duncan), age 14. Officer Willis asked Duncan if "Mickey" was home and he replied "[N]o". As Officer Willis turned to leave, Holt, who was washing his car nearby, identified himself as "Mickey" and asked what she wanted. Officer Willis

responded that she "wanted to get one." As a result of Officer Willis's reply, Holt directed Duncan to enter the house to get "one." Duncan did as instructed and upon his return handed a clear plastic ziplock bag containing 1.22 grams of marijuana [1] to Officer Willis in exchange for two prerecorded five dollar bills.

Officer Willis, after concluding the purchase of the marijuana, left the premises at approximately 3:20 p.m. Officer Willis then notified her back up unit by radio describing what had occurred regarding the purchase including physical descriptions of both Holt and Duncan. The backup unit, which consisted of Lieutenant Joseph DiLacqua, Detectives Charles Myers and Robert Tames, and Officer Marvin Young, proceeded to the house to arrest the individuals involved in the sale of the drugs. Upon their arrival, at approximately 3:30 p.m., the back up unit observed Duncan standing in the doorway of the house. Detective Myers identified himself to Duncan who turned and fled into the house. Detective Myers gave chase and apprehended Duncan approximately six to eight feet within the house. Once inside the house, Detective Myers observed, in plain view on a nearby table in the center of the front room of the house, a large clear plastic bag containing 32 small ziplock plastic bags of marijuana. Duncan stated that the marijuana did not belong to him and informed the police where they could find more marijuana hidden in the house. Duncan was arrested at this point. Lieutenant DiLacqua contacted Officer Willis by radio and told her to secure a search warrant for the house. After conducting a cursory safety check of the house,[2] the police secured the premises pending the issuance of the search warrant and waited for

[1]. There is no dispute that the subject of the drug transaction and the contraband which was later confiscated from the home was in fact marijuana.

[2]. Once the police were inside the house, they conducted a search of the home looking for the presence of other individuals in the house that might have posed a threat to the police. *See Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Commonwealth v. Bruner*, 388 Pa.Superior Ct. 82, 564 A.2d 1277 (1989).

Holt who was not home when the police entered his house. No search for evidence was conducted at this time.

Holt returned to the house at approximately 4:30 p.m. and was arrested at that time. Both Holt and Duncan were detained at the house pending the arrival of the search warrant. At approximately 6:18 p.m., the police at the house were informed that the application for a search warrant had been approved and signed. The police thereafter commenced to search the house for evidence. As a result of their search, the police recovered various items,[3] including $16,208.38 in currency. The police seized the items found in the house.[4]

■ On May 31, 1990, the Commonwealth filed a petition for forfeiture of property seeking the forfeiture of the $16,-208.38 in currency as the proceeds from the sale of controlled substances. On July 5, 1990, Holt filed an answer[5] to the Commonwealth's petition asserting that the cash in question was not proceeds from the sale of drugs and sought return of the money. A hearing was held before the trial court on September 10, 1991. At the outset of the hearing, counsel for Holt made an oral motion for the suppression of all evidence seized during the search of Holt's house. At the conclusion of the testimony regarding the suppression motion, the trial court denied the motion and ruled on the merits of the case based upon the testimony elicited up to that point. The trial court thereafter denied Holt's petition for return and granted the Commonwealth's petition for forfeiture directing that the money be transferred to the Philadelphia District Attorney's

3. The police also recovered approximately two and one-half pounds of marijuana, two loaded handguns, ammunition, savings bonds, three scales, Holt's savings account passbook, a videotape recorder, and other drug paraphernalia.

4. Pursuant to Section 6801(b) of the Act, property subject to forfeiture may be seized by the law enforcement authority upon process issued by any court of common pleas having jurisdiction over the property. 42 Pa.C.S. § 6801(b). The police also seized Holt's 1982 Cadillac and his bank savings account.

5. Ordinarily, return of property is sought by a separate petition pursuant to Pennsylvania Rule of Criminal Procedure 324, Pa.R.Crim.P. 324. For purposes of this appeal, Holt's answer will be treated as a petition for return of property.

Office.[6] Holt filed this appeal.[7]

■ Holt raises several issues on appeal to this Court.[8] Holt first asserts that the decision of the trial court to forfeit the money was contrary to the weight of the evidence presented at the hearing. Holt next asserts that the trial court erred in not granting his motion to suppress all evidence seized from his house. Since our disposition of the second issue could affect the necessity of our review of the first issue, we will address the issues in the reverse order in which they were raised.[9]

### Suppression Motion

Holt asserts that, by entering his house without an arrest or search warrant, in the absence of exigent circumstances, the

6. The other items which were seized by the police during the search were either ordered returned or voluntarily forfeited; in any event, the $16,208.38 in currency is the only property subject to this appeal.

7. Holt's appeal was originally filed with the Superior Court, which transferred the case to this Court on November 18, 1992.

8. Holt asserts that the trial court erred in allowing Officer Steven Powell to testify as an expert in regard to the relationship of the currency seized to the marijuana; however, as this issue was neither raised before the trial court nor developed in the argument portion of Holt's brief, it is accordingly waived. *See Fisher v. Brick,* 358 Pa. 260, 56 A.2d 213 (1948) (an appellate court does not sit to review questions that were neither raised, tried, nor considered by the trial court); *Ibn–Sadiika v. Riester,* 380 Pa.Superior Ct. 397, 551 A.2d 1112 (1988) (when an appellant fails to carry forward, or is indecipherably vague in, argumentation upon a certain point in his appellate brief, that point is waived).

9. In *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the United States Supreme Court, in reversing the judgment of the Pennsylvania Supreme Court, held that the constitutional exclusionary rule, relating to evidence obtained in violation of the Fourth Amendment of the United States Constitution, as applied to the States by the Fourteenth Amendment, does apply to forfeiture proceedings. *See United States of America v. 1988 BMW 750IL, Vehicle ID No. WBAGC8318J2765453,* 716 F.Supp. 171 (E.D.Pa.1989); *see also Commonwealth v. One 1988 Suzuki Samurai,* 139 Pa.Commonwealth Ct. 68, 589 A.2d 770 (1991) (because the Act is modeled after its federal counterpart, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881(a), federal decisions that construe the federal statute, albeit nonbinding authority, are compelling and persuasive in construing the Act).

police violated his rights under both the Pennsylvania and United States Constitutions regarding searches and seizures. Holt asserts that the police improperly created exigent circumstances by their actions and that such manufactured circumstances cannot serve as the basis of a warrantless search. *See Commonwealth v. Rispo,* 338 Pa.Superior Ct. 225, 487 A.2d 937 (1985). It is important to note that Holt does not contest the validity of the search warrant which was eventually issued, but instead asserts the police improperly engaged in a search of his home prior to the issuance of the warrant.

Although Holt and Duncan testified that the police searched the house prior to the issuance of the warrant, the police testified to the contrary. Lieutenant DiLacqua and Detectives Myers and Tames all testified that they entered Holt's house at approximately 3:30 p.m. in pursuit of a fleeing Duncan whom they had intended to arrest for his participation in the sale of marijuana to Officer Willis. Once inside the house, they arrested Duncan and observed in plain view several packets of marijuana at which time they then requested a search warrant. After conducting a cursory safety check of the house for the presence of other individuals which might post a threat to them, they secured the premises pending the issuance of the search warrant. No search of the house for evidence was conducted until after they had learned that the warrant had in fact been issued at approximately 6:18 p.m.

On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact. *Commonwealth v. Eliff,* 300 Pa.Superior Ct. 423, 446 A.2d 927 (1982). Where the suppression court's findings are amply supported by the record, they may not be disturbed on appeal. *Id.* In considering whether the record supports the court's findings of fact, we must restrict ourselves to reviewing the evidence presented by the Commonwealth,[10] and so much of the evi-

10. The burden of proving the admissibility of the evidence rests with the Commonwealth; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the

dence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* It is important to note that it is the exclusive province of the suppression court to determine the credibility of witnesses and the weight to be accorded their testimony. *Commonwealth v. Mason,* 415 Pa.Superior Ct. 22, 608 A.2d 506 (1992) *appeal granted,* 533 Pa. 608, 618 A.2d 399 (1992); *Commonwealth v. 1985 Cadillac Seville,* 371 Pa.Superior Ct. 390, 538 A.2d 71 (1988); *Commonwealth v. $15,836.85—Cash,* 354 Pa.Superior Ct. 279, 511 A.2d 871 (1986).

 The trial court determined that the matter was one of credibility and accepted the testimony of the police that no search for evidence was performed until after they were advised of the issuance of the search warrant. Accordingly, the trial court did not err in not granting Holt's motion to suppress the evidence seized from his house.

### Forfeiture Petition

 In all forfeiture proceedings regarding the possible forfeiture of money, the Commonwealth bears the initial burden of establishing either 1) that the money was furnished or intended to be furnished in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act [11] (Controlled Substance Act), or the proceeds traceable to such an exchange, or 2) that the money was used or intended to be used to facilitate any violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(i)(A), (B). In so showing, the Commonwealth must establish a nexus between the unlawful activity and the property subject to forfeiture.[12] *Commonwealth v. Nineteen Hundred and Twen-*

evidence whose suppression has been moved, is that of the preponderance of the evidence. *Eliff,* 300 Pa.Superior Ct. 423, 446 A.2d 927 (1982).

11. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101—780–144.

12. Forfeiture proceedings in Pennsylvania, while quasi-criminal in nature, are civil in form. 42 Pa.C.S. § 6802(a); *Commonwealth v. One 1983 Toyota Corolla,* 134 Pa.Commonwealth Ct. 325, 578 A.2d 90 (1990). Accordingly, the standard of proof is by a preponderance of the

*ty Dollars United States Currency*, 149 Pa.Commonwealth Ct. 132, 612 A.2d 614 (1992). If the Commonwealth prima facie establishes that the money was subject to forfeiture under Section 6801(a) of the Act, the burden shall be upon the claimant to show 1) that the claimant is the owner of the money, 2) that the claimant lawfully acquired the money, and 3) that the money was not unlawfully used or possessed by him. 42 Pa.C.S. § 6802(j); *Commonwealth v. One 1974 Chevrolet Box–Type Truck*, 126 Pa.Commonwealth Ct. 173, 559 A.2d 76 (1989) (where the Commonwealth sustains its burden, the burden of producing evidence shifts to the property owner to disprove the Commonwealth's evidence or establish a statutory defense to avoid forfeiture).

It is well established that where the currency is found in close proximity to controlled substances which are unlawfully possessed, such currency is rebuttably presumed to be proceeds derived from selling a controlled substance in violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(ii); *Commonwealth v. Giffin*, 407 Pa.Superior Ct. 15, 595 A.2d 101 (1991). Holt concedes that the $16,208.38 in currency was stored in a location of close proximity to the marijuana and therefore does not contest that the Commonwealth prima facie established that the money was subject to forfeiture under Section 6801(a) of the Act. Holt asserts instead that he met his burden by presenting evidence which rebutted the presumption that the currency was the proceeds from the selling of controlled substances. The essence of Holt's argument is that the trial court's determination was contrary to the weight of the evidence presented at the hearing.

Holt testified that he worked as a unionized construction worker for over twenty-five years.[13] Holt claimed that beginning in the early 1970s he adopted a personal savings plan by

evidence. *Commonwealth v. One 1988 Suzuki Samurai*, 139 Pa.Commonwealth Ct. 68, 589 A.2d 770 (1991).

13. Holt testified that when he first started working as a construction worker he earned $4.05 an hour and that he currently earned $17.40 an hour.

which he would deposit the portion of his paycheck which exceeded the round hundred dollar amount. For example, if Holt was paid $553.00, he would deposit the $53 in the bank and would retain the balance in cash, normally in the form of one-hundred bills. Holt worked out of his union hall and not for a specific employer. As a result, the number of hours which Holt would work during a pay period often varied and he experienced periods of unemployment between construction jobs. Accordingly, Holt's earnings fluctuated from year to year. Holt presented evidence of adjusted gross income as follows: $18,000.00 in 1983, $20,229.00 in 1988, and $13,549.00 in 1990. Holt also presented the savings account passbook as evidence that periodic deposits were in fact made to his bank account. Maria Ioquinto, a teller at Holt's bank, testified and corroborated Holt's testimony as to his banking practices.

Holt denied that any of the $16,208.38 in currency was accumulated from the profits he made from selling marijuana. Holt claimed to have never sold marijuana before May 22, 1990, the day of the search, and to only have earned about $80.00 from selling marijuana. Holt also claimed that the marijuana had only arrived at his house the day before the search was conducted.

The trial court found that, although Holt produced evidence that certain regular deposits were in fact made to his bank account, the amount of income reported on his federal income tax returns for previous years was inconsistent with the notion that Hold could have accumulated such vast savings. The trial court did not credit Holt's testimony that he saved the currency in question based upon his modest income.

We note that the evidence and testimony regarding Holt's banking practices only establishes a link between the money in Holt's bank account and the income he earned as a construction worker. Holt did not produce any evidence of a legitimate source for the money found in his house.

Officer Steven Powell, testifying as an expert regarding the packaging, distribution, and sale of marijuana, stated that the keeping of substantial sums of money in close proximity to a

controlled substance, as here, was consistent with the operation of a marijuana distribution system similar to the one being conducted by Holt. Officer Powell estimated that the amount of marijuana seized, if sold in one and one-half gram packets, would have a street value worth $7,360.00. Officer Powell also testified that distributors like Holt often purchase marijuana in bulk form for between $2,000.00 and $2,500.00 per pound depending upon the quality of the marijuana. Officer Powell further testified that such bulk purchases normally involve the use of large denominations of money, usually one-hundred or fifty dollar bills.

We note that "[o]n appeal, it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact." *See Allegheny County v. Monzo*, 509 Pa. 26, 35, 500 A.2d 1096, 1101 (1985). From all of the evidence submitted at the hearing, the trial court concluded that the currency seized from Holt's house had a nexus to Holt's admitted possession and sale of marijuana.

Accordingly, the decision of the trial court was not contrary to the weight of the evidence.

## ORDER

AND NOW, this 8th day of December, 1993, the order of the Court of Common Pleas of Philadelphia County, dated September 10, 1991, is affirmed.