680 A.2d 1128

COMMONWEALTH of Pennsylvania

v.

ALL THAT CERTAIN PARCEL AND LOT OF LAND LOCATED AT 4029 BEALE AVENUE, ALTOONA, BLAIR COUNTY, Pennsylvania, together with all of its improvements, Appurtenances, Buildings, Structures, and all other items as described in Deed Book Volume 1133, page 267 and 1983 Dodge Charger Vin # 1B3BZ54C2DD272601.

Appeal of Ralph and Mary OLIVO.

Supreme Court of Pennsylvania.

Argued March 6, 1996.

Decided July 18, 1996.

Michael L. Rosenfeld, Pittsburgh, for Ralph and Mary Olivo.

Douglas Keating, Hollidaysburg, John M. Daley, Pittsburgh, for Commonwealth.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

*OPINION*

ZAPPALA, Justice.

This appeal raises the issue of whether the forfeiture of the residence of Appellants, Mary and Ralph Olivo, violates the excessive fine provision of Article I, Section 13 of the Pennsylvania Constitution.[1]

The record establishes that on November 7, 1992, Ralph Olivo telephoned Dennis Colello, a Commonwealth informant.[2] Olivo told Colello that for $1,350.00 "up front" money, he could obtain one ounce of cocaine. Olivo later went to Colello's home and collected the money. The next day, Colello went to Olivo's home on 4029 Beale Avenue and picked up the cocaine.

On November 27, 1992, Olivo again telephoned Colello regarding a sale of one ounce of cocaine. This time, Colello went to Olivo's home to deliver the $1,350.00. Mary Olivo informed Colello that her husband was not home, but directed him to leave the money with her. She also informed Colello that if he purchased two ounces of cocaine, he would save $200.00 per ounce. Colello refused, stating he could only afford one ounce. The next day, Colello returned and Olivo delivered to him approximately one ounce of cocaine.

The Olivos were thereafter arrested. Upon searching their residence, police officers discovered 1/4 pound of marijuana underneath a floor heat grate in the master bedroom. Ralph Olivo was subsequently convicted of two counts of delivery of cocaine, criminal conspiracy to deliver cocaine and possession of marijuana. He was found not guilty of possession with intent to deliver marijuana. Mary Olivo was convicted of criminal conspiracy to deliver cocaine.

1. That section provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."

2. Prior thereto, Colello had gone to Olivo's place of business and attempted to purchase one ounce of cocaine. Olivo did not sell Colello any drugs at that time but stated that he would get in touch with Colello.

Pursuant to the Controlled Substance Forfeiture Act, 42 Pa.C.S. §§ 6801(a)(4)[3] and (a)(6)(i)(C),[4] the Commonwealth filed a petition for forfeiture of the Olivo residence and a petition for forfeiture of Mary Olivo's 1983 Dodge Charger. The trial court denied both petitions.[5] It found that the Commonwealth failed to establish a significant relationship between the residence and the two sales of cocaine because: (1) Olivo travelled outside Blair County to obtain the cocaine; (2) Olivo delivered no more than one ounce of cocaine on each occasion; and, (3) the police officers did not find in the house any items characteristically connected with the sale of drugs.[6] It concluded that the forfeiture of the Olivo residence would constitute an excessive fine under Article I, Section 13 of the Pennsylvania Constitution.

The Commonwealth Court affirmed the trial court's order as to the denial of the forfeiture of the vehicle, but reversed as to the denial of the forfeiture of the residence. The court relied on the fact that the two drug transactions occurred at the Olivo residence within a three week period and that Mrs. Olivo solicited a third sale from the residence when Colello paid for the second purchase. It concluded that "substantial evidence existed to prove that the Olivo residence was used to

3. 42 Pa.C.S. § 6801(a)(4) provides for the forfeiture of:
   (4) All conveyances, including aircraft, vehicles or vessels, which are used or are intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of, property described in paragraph (1) or (2), ...

4. 42 Pa.C.S. § 6801(a)(6)(i)(C) provides for the forfeiture of:
   (C) Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, and including any right, title and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

5. At the close of the hearing, the trial court stated that it denied the forfeiture petition as to the vehicle and directed the parties to focus their argument on the forfeiture of the residence. Accordingly, the trial court opinion discussed only the petition for forfeiture of the residence.

6. The court also noted that the jury determined that the 1/4 pound of marijuana was not possessed with the intent to deliver.

facilitate on-going illegal drug transactions." Slip op. at 6, 653 A.2d 720.[7]

As noted, we must determine whether the forfeiture of Appellants' home is an excessive fine. Appellants contend that because the Commonwealth failed to establish a significant relationship between the criminal conduct and the subject of forfeiture, the trial court properly denied the petition for forfeiture pursuant to *In Re King Properties,* 535 Pa. 321, 635 A.2d 128 (1993), and the United States Supreme Court decision in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Appellants further assert that the Commonwealth Court erroneously reversed the denial of the forfeiture petition since a trial court's decision cannot be overturned if based on competent evidence. *Commonwealth v. Schill,* 164 Pa.Cmwlth. 594, 643 A.2d 1143 (1994).

In *King Properties,* a search of King's residence revealed $4,395.00 in cash, 12 to 14 grams of cocaine, a supply of plastic baggies with the corners cut, and a triple beam scale. King admitted he was the owner and only resident of the house. Further, although King claimed that he was a laid-off black-topping worker, he had made a cash payment of $46,365.95 toward the purchase price of his home and a cash payment of $6,412.66 for furniture. A second search of the home six months later revealed additional drug paraphernalia.[8]

The trial court granted the Commonwealth's petition for forfeiture of the residence, but permitted King to redeem the house for $30,000.00. The Commonwealth Court affirmed the forfeiture but reversed as to the redemption. Our Court affirmed, holding that the forfeiture of King's house did not constitute an "excessive fine" under Article I, Section 13 of the Pennsylvania Constitution and that the right of redemption is not permitted in the context of a statutory forfeiture. We relied on *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801,

**7.** Judge Friedman filed a dissenting opinion in which she concluded that the trial court did not err in denying the forfeiture of Appellants' home. She concluded that the record supported the trial court's finding that there was no relevant pattern of criminal conduct connected with Appellants' residence.

**8.** Further evidence of drug trafficking was found in King's Lincoln Continental.

125 L.Ed.2d 488 (1993), which held that the excessive fines provision of the Eighth Amendment applies to drug-related forfeitures of property to the United States under 21 U.S.C. §§ 881(a)(4) and 881(a)(7) because such a forfeiture constitutes a payment to government as a punishment. We found that although the excessive fines provision of Article I, § 13 of the Pennsylvania Constitution is applicable to forfeiture cases, the forfeiture of King's residence did not violate that provision since the home was used as the base of a drug-trafficking operation.

We also set forth appropriate factors to be considered when determining whether a forfeiture violates the excessive fines provision of Article I, Section 13. We found that rather than focusing on the value of the property forfeited, the court should inquire as to the *relationship* of the offense to the property. *King Properties,* 535 Pa. at 331, 635 A.2d at 133. We held that if the forfeited property was significantly used in the commission of the offense, the item may be forfeited regardless of its value. *Id.* Where the evidence is that the criminal incident on which the forfeiture is based is not part of a pattern of similar incidents, there is no "significant" relationship between the property sought to be forfeited and the offense. We concluded that otherwise, significant property interests might become forfeit based on an unusual and unaccustomed incident. *Id.*

We also stated in *King Properties* that, in the context of determining whether a forfeiture constitutes an excessive fine, the Commonwealth bears the burden of proving, by clear and convincing evidence, that the criminal conduct in question establishes a relevant pattern rather than a onetime occurrence.[9] The Commonwealth may meet this burden by utilizing circumstantial evidence. *Id.*

9. This is not to be confused with the initial burden of the Commonwealth to establish, by a preponderance of the evidence, that a nexus between the unlawful activity and the subject of forfeiture exists. See *Commonwealth v. Schill,* 164 Pa.Cmwlth. 594, 643 A.2d 1143 (1994); *Commonwealth v. Nineteen Hundred and Twenty Dollars U.S. Currency,* 149 Pa.Cmwlth. 132, 612 A.2d 614 (1992).

Applying these concepts to the case at bar, we find that the trial court did not abuse its discretion in denying the petition for forfeiture of the residence. We reach this conclusion because the Commonwealth did not establish a significant relationship between the drug transactions and the property forfeited. Unlike *King Properties,* no cocaine or instrumentalities of the drug trade were found in Appellants' home.[10] There was no evidence that the drugs were diluted or stored in the residence. *Compare Commonwealth v. Schill,* 164 Pa.Cmwlth. 594, 643 A.2d 1143 (1994) (forfeiture upheld where search of the residence revealed four packets of cocaine, two bottles of inositol, a piece of glass, a credit card, various plastic bags, and a glass vial, all of which contained cocaine residue). There was also no evidence of large amounts of cash, which would have supported the inference that a series of drug sales had taken place in the house. The sole evidence supporting the forfeiture petition consisted of two transactions within a three week period involving, on each occasion, one ounce of cocaine. We find that the trial court did not abuse its discretion in finding such evidence to be insufficient to establish a relevant pattern of similar criminal incidents necessary to warrant forfeiture of the property involved.[11] As the trial court's findings were supported by competent evidence of record, the Commonwealth Court erroneously reversed the denial of the forfeiture petition.[12]

**10.** We agree with the trial court's conclusion that the jury's finding of not guilty to possession with intent to deliver marijuana in Olivo's criminal trial is indicative of the marijuana being present for mere personal use.

**11.** As Justice Scalia observed in *Austin:*

Scales used to measure out unlawful drugs sales, for example, are confiscable whether made of the purest gold or the basest metal. But an in rem forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense—the building, for example in which an isolated drug sale happens to occur. Such a confiscation would be an excessive fine.

509 U.S. at 627–28, 113 S.Ct. at 2815, 125 L.Ed.2d. at 509 (Scalia, J., concurring.)

**12.** Appellants also contend that the forfeiture action violates their right to be free from double jeopardy since it took place after the criminal

Accordingly, the order of the Commonwealth Court is re-versed.

NIX, C.J., and NEWMAN, J., did not participate in the consideration or decision of this case.

NIGRO, J., files a dissenting opinion in which CASTILLE, J., joins.

NIGRO, Justice, *dissenting.*

I respectfully dissent. The Commonwealth should not have to establish that manufacturing, packaging and/or other paraphernalia was present in the subject premises to find a significant relationship existed. The language of 42 Pa.C.S. § 6801(a)(6)(i)(C) provides for forfeiture of real property "used or intended to be used, ... in any manner or part, to commit, or facilitate the commission of, a violation of the Controlled Substance, Drug, Device, and Cosmetic Act ..." In this case the evidence established that more than one drug transaction occurred from the forfeited real estate. The home was clearly used as the base of a drug trafficking operation and served to facilitate distribution of cocaine within the language of the Forfeiture Act. I find as a matter of law there is a significant relationship between the residence and the drug sales. Accordingly, the property should be forfeited.

CASTILLE,J., joins this dissenting opinion.

trial. Because Appellants did not raise this claim before the Commonwealth Court, we find that it is waived. *See* Pa.R.A.P. 302(a).