698 A.2d 576

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Floyd MARSHALL, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided July 23, 1997.

496

Howard H. Brown, David M. McGlaughlin, Philadelphia, for appellant Floyd Marshall.

Jerome T. Foerster, Harrisburg, Robert A. Graci, Harrisburg, for appellee Commonwealth.

Before FLAHERTY, C.J. and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

NIGRO, Justice.

Appellant Floyd Marshall appeals from the Commonwealth Court's affirmance of the trial court's denial of his motion for the return of $3,400.00 in U.S. currency that had been seized and forfeited to the Commonwealth. For the reasons presented herein, we reverse.

On August 10, 1993, Appellant was asleep in the back seat of a car that was stopped for speeding by State Police Trooper Ryan Hutchinson. After approaching the vehicle and making the initial inquiries, Hutchinson learned that there were outstanding arrest warrants for the driver and the front-seat passenger. Hutchinson arrested these men and placed them in his police cruiser. He then returned to the stopped vehicle and spoke with Appellant. After checking the information Appellant had given him, Hutchinson learned that there was also an outstanding warrant for Appellant's arrest. Hutchinson then asked Appellant to step out of the car.

As Appellant did so, Hutchinson noticed that the back seat cushion was pulled away from the upright portion of the seat, and that packets of currency were present in the exposed area. In response to Hutchinson's inquiries, Appellant stated that $700.00 had been given to him by his girlfriend and that the rest was for a catering business. *See* N.T. at 31a. The driver, however, stated that $400.00 was his. *See* N.T. at 32a.

Hutchinson arrested Appellant and placed him in the police cruiser with the other two men.[1] He then searched their car. From the exposed area in the back seat, he recovered and confiscated $3,400.00 in various denominations, divided into packets totaling $100.00 each, and arranged within each packet so that the individual bills alternated face-up and face-down. The search uncovered no drugs or drug paraphernalia.

The next day, several Troopers hid the $3,400.00 in a desk in the police barracks and conducted a test with a drug-sniffing dog. The dog found the hidden currency and "alerted" on it, indicating the residual presence of cocaine, marijuana, hashish, or heroin. *See* N.T. at 50a–51a.

Appellant filed a motion for return of property pursuant to Pa. R.Crim. P. 324. A hearing was held, during which Appellant stated that $400.00 of the $3,400.00 was his personally. *See* N.T. at 17a. He further stated that he "do[es] a little catering," N.T. at 5a, and that the remaining $3,000.00 had been advanced to him by a relative and a friend in order to buy food for catering jobs. *See* N.T. at 17a, 19a–20a. Hutchinson testified, based on his training, that the manner in which the $3,400.00 was organized and bundled was consistent with drug activity. Also, Trooper Timothy D. Markley, the officer who had overseen the dog-sniff test, testified concerning the design and results of that test.

Based on the evidence presented at the hearing, the trial court denied Appellant's motion and ordered the money forfeited. On appeal, the Commonwealth Court affirmed. Senior Judge Della Porta dissented, however, finding that the

---

1. Appellant was later released due to unspecified problems with the arrest warrant. *See* N.T. at 36a.

Commonwealth had not met its burden of proving a nexus between the money and illegal drug activity.

We granted allocatur to determine whether the trial court erred in concluding that the evidence presented was sufficient to sustain the Commonwealth's burden under 42 Pa.C.S. § 6801(a).[2]

In forfeiture proceedings involving money, the Commonwealth bears the initial burden of proving either 1) that the money was "furnished or intended to be furnished ... in exchange for a controlled substance ..., [or represents the] proceeds traceable to such an exchange"; or 2) that the money was "used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act." 42 Pa.C.S. § 6801(a)(6)(i)(A), (B) (Supp.1995). In meeting this burden, the Commonwealth must establish, by a preponderance of the evidence, the nexus between the money and illegal activity. *See Commonwealth v. $16,208.38 U.S. Currency Seized From Holt,* 160 Pa. Commw. 440, 448, 635 A.2d 233, 237–38 (1993), *appeal denied,* 538 Pa. 634, 647 A.2d 509 (1994); *Commonwealth v. $32,950.00 U.S. Currency,* 160 Pa. Commw. 58, 61, 634 A.2d 697, 698 (1993). If the Commonwealth establishes this nexus, the burden shifts to the claimant to establish that he owns the money, that he lawfully acquired it, and that it was not unlawfully used or possessed by him. *See* 42 Pa.C.S. § 6802(j) (Supp.1995); *Commonwealth v. $16,-208.38 U.S. Currency Seized From Holt,* 160 Pa. Commw. at 449, 635 A.2d at 238; *Commonwealth v. $32,950.00 U.S. Currency,* 160 Pa. Commw. at 62, 634 A.2d at 697.

In the instant case, the trial court found the following facts sufficient to support the conclusion that the money in question was connected to drug activity: 1) Appellant had

**2.** The scope of our review is limited to determining whether the findings of fact made by the trial court are supported by competent evidence, and whether the trial court abused its discretion or committed an error of law. *See Commonwealth v. Fontanez,* Pa. Commw., 679 A.2d 1361, 1365 n. 10 (1996), *appeal granted,* 547 Pa. 732, 689 A.2d 236 (1997); *see also Commonwealth v. All That Certain Parcel and Lot of Land Located at 4029 Beale Ave., Altoona,* 545 Pa. 172, 680 A.2d 1128 (1996) (applying abuse of discretion standard).

been unemployed for 1–1/2 years prior to the arrest; 2) Appellant and the driver of the car gave inconsistent stories concerning the ownership of the money; 3) the currency was bundled in a manner consistent with drug dealing and was found between the seat cushions; 4) the drug-sniffing dog alerted on the cash; and 5) Appellant's testimony was not credible.

The trial court erred in concluding on these facts that the Commonwealth had met its burden under 42 Pa.C.S. § 6801(a). Although the Commonwealth is not required to directly link the property in question to the illegal activity,[3] we are unable to conclude in this case that the Commonwealth has proven anything more than the suspicion of a possible nexus between the $3,400.00 and some type of drug activity.

It is undisputed that no drugs or drug paraphernalia were discovered in the car in which Appellant was riding, or on the persons of Appellant or his two companions. Moreover, Appellant gave uncontested testimony that he had never been arrested on drug charges and had no prior convictions of any kind. *See* N.T. at 7a–8a. And, although the $3,400.00 was bundled in a way drug dealers have been known to arrange their money, such an arrangement is equally consistent with an innocent person's attempt to simplify and promote precision in the counting of lawfully obtained funds.

■ The fact that the drug-sniffing dog alerted on the cash is also not dispositive of the issue. A completely innocent citizen of this Commonwealth could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past. The fact that on August 10, 1993 Appellant found himself in the possession of one, or several, such bills of currency is insufficient to sustain the Commonwealth's clearly established burden to prove at the outset that the money seized has a nexus to some unlawful activity on the part of Appellant. Even when considered in conjunction with all the other facts relied upon by the

3. *See Commonwealth v. $32,950.00 U.S. Currency,* 160 Pa. Commw. at 62, 634 A.2d at 699.

trial court in this case, the residual presence of drugs on some part of the $3,400.00 in question establishes only the possibility or the suspicion of a nexus between the money and some type of drug activity.

The trial court therefore erred in concluding that the Commonwealth had presented evidence sufficient to meet its burden under 42 Pa.C.S. § 6801(a).

Accordingly, we reverse.

NEWMAN, J., did not participate in the consideration or decision of this case.

CASTILLE, J., files a dissenting opinion.

CASTILLE, Justice, dissenting.

The issue before the Court is whether the evidence presented was sufficient to support the trial court's verdict that the $3,400.00 of bundled cash was either "furnished or intended to be furnished ... in exchange for a controlled substance ...,  [or represents the] proceeds traceable to such an exchange," or "used or intended to be used to facilitate any violation of the Controlled Substance, Drug, Device and Cosmetic Act." 42 Pa.C.S. § 6801(a)(6)(A), (B). The majority, in reaching its holding that the Commonwealth failed to prove that the money had a nexus to illegal activity, essentially ignored the applicable standard of review. When the evidence is viewed in its proper light, there is ample evidence to support the trial court's conclusion that a nexus to illegal drug activity existed.

It has been this Court's long established precedence, in both civil and criminal cases, that when the sufficiency of the evidence is being challenged, our standard of review is that we must view all the evidence and all reasonable inferences that arise therefrom in the *light most favorable to the verdict winner. Commonwealth v. Speight*, 544 Pa. 451, 458, 677 A.2d 317, 320 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997); *Kunkel v. Allentown Portland Cement Co.*, 249 Pa. 104, 106, 94 A. 450 (1915). The majority here, instead of viewing the evidence in its proper light, instead

views it in the light most favorable to the *verdict loser.* Hence, I must respectfully dissent.

The evidence viewed properly demonstrates that Trooper Hutchinson, the arresting officer, found money in the back of the car tucked under the bottom cushion of the car's back seat, grouped into $100 bundles with each successive bill alternated back to front. When the trooper first approached the car, petitioner was lying down and appeared to be sleeping, but was later sitting upright in the back seat. The trooper testified that the bundling method used was a common practice among drug dealers to make it easier to make change. Trooper Hutchinson testified that the numerous bundles of cash covered a large area in volume, implying that it would not have fit in a pants pocket.

Trooper Markley, whose trained drug detection canine conducted a sniff of the money, testified that although the scent of drugs dissipates over time, based on his experience, his dog had reacted to a strong scent on the money indicating recent contact with illegal drugs.

This evidence alone was sufficient to prove a nexus between the cash and illegal drug activity. However, the trial court also had the benefit of seeing appellant and hearing his version of the facts, which it found were not credible or corroborated. Appellant testified that the $3,400.00 cash simply fell out of his pocket. Appellant did not explain how this large bundle became inexplicably hidden under the back seat cushion. Appellant did not testify why the money had been arranged in the manner it was, and offered the explanation that someone (who he failed to call on his behalf) had loaned him the cash to buy food for an alleged catering business. Appellant's demeanor and credibility is unfortunately something which the majority cannot glean from a cold record.

The majority nevertheless finds that appellant's possession of heavily drug scented cash, unusually packaged in a manner consistent with the drug trade, hidden under the bottom seat cushion in the car, is as consistent with innocent behavior as it is with unlawful activity. This, quite simply, is *not* the stan-

dard under which such evidence is to be evaluated. *See Riddle Memorial Hosp. v. Dohan,* 504 Pa. 571, 578, 475 A.2d 1314, 1317 (1984) (held that an appellate court should not superimpose its beliefs for that of the finder of fact so long as sufficient evidence was presented to establish that reasonable people may differ as to the verdict).

Specifically, the majority states that even though evidence was introduced that the $3,400.00 was bundled in a way drug dealers arrange their money, such an arrangement is equally consistent with an "innocent person's attempt to simplify and promote precision in the counting of lawfully obtained funds." Notwithstanding that the latter assertion is *dehors* the record and constitutes mere speculation on the part of the majority which I would disagree with (also *dehors* the record) the majority is ignoring the standard of review that the evidence must be viewed in the light *most favorable to the Commonwealth* and that even if there are two reasonable inferences that can be drawn from the same evidence, we are bound to adopt the inference most favorable to the Commonwealth as the verdict winner.

Again, the majority ignores the proper standard of review where a drug-sniffing dog alerted to the presence of drugs on the $3,400.00. Instead of viewing this evidence in the light most favorable to the Commonwealth, the majority retreats again *dehors* the record and opines that "a completely innocent citizen of this Commonwealth could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past." Nowhere in the record does this assertion appear and nowhere is there introduced *any* evidence to support this assertion. In fact, Trooper Markley testified that from his trained dog's reaction to the sniff search, there was a "strong odor" on the currency as opposed to a "little bit on one dollar or so." (N.T. 55a) He also testified that "eventually if money has the odor of drugs on it it will lose the odor" and that if the currency "is left out in the air the odor permeates and dissipates." (N.T. 57a) Therefore, not only is the majority not viewing the evidence in the light most favorable to the Commonwealth, but

also the majority is drawing inferences not arising from the record and exactly opposite testimony of record. In short, the majority ignores the proper standard of review, fails to view the evidence in the light most favorable to the verdict winner and is substituting its evaluation of the facts for that of the trial court which is supported by substantial evidence of record.

The record contains sufficient evidence to support the finding, based on a preponderance of the evidence, that there was a nexus between the money and illegal drug activity. Since the Commonwealth established its *prima facie* case, appellant then had the burden to prove that the money was lawfully acquired and not unlawfully used or possessed. The trial court clearly, by its verdict, found that appellant's self-serving uncorroborated testimony that such money was advanced to him by some uncalled person to buy food for an unestablished catering business, was simply not credible. Appellant was therefore unable to establish that he lawfully acquired the money and that it was not unlawfully used in the drug trade. Accordingly, I would affirm the order of the Commonwealth Court and allow forfeiture of appellant's money to the Commonwealth of Pennsylvania.