COMMONWEALTH of Pennsylvania

v.

$17,182.00 U.S. CURRENCY.

Curtis King

v.

Mark A. Conrad, Pennsylvania State Police Commonwealth of Pennsylvania.

Appeal of: Curtis King.

Commonwealth Court of Pennsylvania.

Argued March 12, 2012.

Decided May 1, 2012.

Thomas A. Jones, Mt. Pocono, for appellant.

William R. Stoycos, Senior Deputy Attorney General, Harrisburg, for appellees.

BEFORE: SIMPSON, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Curtis King (King) appeals from the July 15, 2011, order of the Court of Common Pleas of Monroe County (trial court), granting the Commonwealth's petition for forfeiture and denying King's motion for return of property. We reverse.

On April 5, 2010, King, a New York resident, was traveling east on Interstate Route 80 toward New York City when Trooper Mark Conrad stopped him for an alleged motor vehicle code violation. During the traffic stop, Trooper Conrad observed that King had only a single key in the ignition and that the car was registered to someone other than King. Trooper Conrad ran a criminal history on King and found that King had criminal arrests for distribution of drugs in upstate New York, the most recent of which was in 2006. Trooper Conrad asked King to consent to a search of the vehicle, but King refused. Trooper Conrad called a K–9 unit, and when it arrived, the dog "alerted" at the passenger door of the vehicle. Trooper Conrad once again asked King if he could search the vehicle; when King refused, Trooper Conrad impounded the vehicle, handcuffed King, and took him to the police barracks. Although a search of the vehicle revealed no drugs, $17,182, rubber-banded in $1,000 increments, was found in the center console of the car. The cash was seized. King was released, and no traffic citation or criminal charges were filed.

The trial court consolidated the Commonwealth's petition for forfeiture of the cash with King's petition for return of

property and held a hearing on May 20, 2011. At the hearing, the Commonwealth presented the testimony of Trooper Conrad; Trooper Jerry Powell, the canine handler who reported to the scene; Trooper Tom Appleman; and Sergeant Frank Jost of the National Guard. The latter two of these witnesses, Trooper Appleman and Sergeant Jost, testified about an ion scan performed on the seized cash.

Trooper Conrad testified that the stretch of road on which King was traveling was a "drug corridor" and that having a single key in the ignition of a borrowed car was a common practice of drug dealers. (N.T. at 9–10.) According to Trooper Conrad, the manner in which the money was bundled was consistent with drug trafficking because it is "easy to count and distribute the money" that way. (N.T. at 14.) Trooper Conrad also stated that King was evasive when asked whether there was money in the car. Trooper Conrad also testified extensively about his conversations with King during the traffic stop and at the police barracks, but he acknowledged that he did not give King his Miranda warnings at any time.

King testified that he was traveling to New York City to take some clothing to his younger brothers. He testified that he was a senior in college, he lived with his uncle, he was not employed, and he survived on help from his parents, student loans, and financial aid. According to King, $6,000 of the money was his and the rest was a loan from Albert Newman, a New York car dealer, for the purpose of buying a car in New Jersey and then selling the car at a profit in New York. King acknowledged that he had one prior conviction in New York for possession of cocaine.

The trial court excluded all information Trooper Conrad elicited from King at the police barracks because King had not been advised of his Miranda rights. The trial court also found that the ion scan test results were inadmissible because the wrong casual contact level had been used.[1]

Despite having excluded much of the evidence adduced at the hearing, the trial court concluded that the following evidence was sufficient to establish a nexus between the money and a violation of the Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act):[2] (1) there was only a single key in the ignition; (2) the vehicle was not registered to King; (3) King had a criminal history; (4) King was traveling in a "drug corridor"; and (5) King "admitted that he was a [well-known] drug dealer in Binghamton." (Trial court op. at 9.) This latter "evidence," that King admitted to being a drug dealer, was drawn from Trooper Conrad's testimony about his conversations with King, which the trial court purportedly excluded. Having concluded that the evidence established the required nexus, the trial court granted the Commonwealth's forfeiture petition and denied King's petition for return of property.

On appeal to this Court,[3] King argues that the Commonwealth failed to meet its

---

1. Casual contact levels show the average amount of drug residue present on cash in circulation in a particular geographical area. In order for the ion scan to be of any value, information regarding the relevant geographical area(s) must be considered. *See Commonwealth v. $9,000 U.S. Currency,* 8 A.3d 379 (Pa.Cmwlth.2010). Here, Sergeant Jost used the casual contact level for Pennsylvania. However, because King was travelling from Binghamton, New York, to New York City, there was no evidence that the cash had ever circulated in Pennsylvania, and the trial court properly excluded all evidence of the ion scan.

2. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

3. Our scope of review is limited to determining whether the trial court's factual findings are supported by substantial evidence, wheth-

burden to establish a nexus between the seized currency and criminal activity. We agree.

### Discussion

■ In relevant part, section 6801 of the Controlled Substances Forfeiture Act (Forfeiture Act) provides as follows:

(a) **Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

\* \* \*

■ (6) (i) All of the following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S. § 6801(a)(6)(i)(A) and (B). Pursuant to the Forfeiture Act, the Common-

wealth bears the initial burden of proving that forfeiture was appropriate under either of the above provisions. *Commonwealth v. Esquilin*, 583 Pa. 544, 880 A.2d 523 (2005). To meet this burden, the Commonwealth "must establish, by a preponderance of the evidence, that a nexus exists between the money and a violation of the Controlled Substance Act." *Id.*, 583 Pa. at 555, 880 A.2d at 529. The Commonwealth may satisfy its burden by circumstantial evidence, *id.*, but it must establish more than a mere suspicion of a nexus. *Commonwealth v. Marshall*, 548 Pa. 495, 698 A.2d 576 (1997). If the Commonwealth establishes a nexus between the money and illegal activity by a preponderance of the evidence, the burden shifts to the claimant to show that he or she owns the money, acquired it lawfully, and did not use it or possess it unlawfully.[4] *Id.*

■ Here, both parties agree that the trial court correctly excluded all evidence of the ion scan and the allegedly incriminating statements King made to Trooper Conrad.[5] (King's brief at 9; Commonwealth's brief at 13.) King argues that without that evidence, the Commonwealth, as a matter of law, did not meet its initial burden of showing a nexus between the seized cash and illegal drug activity.[6] In

---

er the trial court abused its discretion, or whether the trial court committed an error of law. *Commonwealth v. McJett*, 811 A.2d 104 (Pa.Cmwlth.2002).

4. *See* section 6802(j) of the Forfeiture Act, 42 Pa.C.S. § 6802(j).

5. In *One 1958 Plymouth Sedan v. Commonwealth*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the United States Supreme Court held that the exclusionary rule developed in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding that evidence obtained in violation of the U.S. Constitution was inadmissible) applies to forfeiture proceedings as well as criminal proceedings.

6. The Commonwealth argues that King's refusal to have his car searched and his avoidance of Trooper Conrad's query as to whether he had cash in his car should be considered evidence of a "consciousness of guilt." (Commonwealth's brief at 9, 13.) However, as the Commonwealth presumably is aware, a person stopped for a traffic violation has no obligation to respond to any question posed by an officer apart from a request to produce a driver's license, registration and proof of insurance. *Commonwealth v. Fontanez*, 559 Pa. 92, 739 A.2d 152 (1999). "Failure to give an explanation when none is required cannot be construed as evidence of wrong-doing." *Id.* at 96, 739 A.2d at 154.

the absence of evidence of drugs or drug paraphernalia, the trial court considers the totality of the evidence and properly draws logical inferences therefrom to ascertain whether a nexus exists. *See Esquilin*, 583 Pa. at 560, 880 A.2d at 532; *Commonwealth v. Fontanez*, 559 Pa. 92, 96, 739 A.2d 152, 155 (1999); *Marshall*, 548 Pa. 495, 501, 698 A.2d 576, 579 (1997); *Commonwealth v. Three Hundred Ten Thousand Twenty Dollars ($310,020.00) In United States Currency*, 894 A.2d 154, 161 (Pa.Cmwlth.2006). Disregarding the results of the ion scan and any incriminating statements King allegedly made, we consider the remaining evidence upon which the trial court relied; specifically, that King was driving with a single key, the vehicle was not registered to him, he was driving in a "drug corridor," he had a criminal history, the money was bundled in $1,000 increments, and a drug dog alerted on the car.

In *Fontanez* and *Marshall*, two cases similar to that *sub judice*, our Supreme Court reversed the forfeiture of large sums of money where no drugs or drug paraphernalia had been found on or near the claimants and no illegal drug transactions had been observed. In *Fontanez*, police stopped a driver for a traffic violation and found $2,650 in a paper bag on the floor of the car. A drug dog alerted at the car, but no drugs were found and no criminal charges were filed. At some time later, Fontanez was arrested for transporting drugs in an entirely different incident. At the hearing on Fontanez' motion for return of property, the police officer testified that he knew Fontanez to be involved in illegal drug trafficking and that the stop took place in an area known for drug activity.

The court noted that, although not dispositive, the fact that the claimant was not charged with a crime in relation to the seized funds was probative of whether the money was indeed contraband. *Id.* at 95, 739 A.2d at 154. The court also pointed out the inherent unreliability of drug dogs and the fact that drug dogs will alert to almost any currency presented to them; the court further observed that the locale of the traffic stop had little significance because it occurred in the neighborhood where Fontanez lived. *Id.* at 97, 739 A.2d at 154. The court concluded that evidence of these factors, taken individually or in combination, was insufficient as a matter of law to sustain the Commonwealth's burden of proving a nexus between the money and illegal drug activity.

The Commonwealth's evidence in this case is similar to the evidence in *Fontanez*. The distinguishing factors presented here are that the money was bundled in $1,000 packets and King was driving a borrowed car with a single key. However, in *Marshall*, our Supreme Court rejected the notion that bundling cash into packets is necessarily evidence of drug trafficking. In that case, police stopped a vehicle for speeding and discovered $3,400 divided into $100 packets hidden between the seats. A drug dog alerted on the cash. One of the passengers, Marshall, asserted that the money was his, but he was unemployed and there were inconsistencies in his story. Marshall did not have a criminal drug history, and no drugs were found in the car. Our Supreme Court concluded that this evidence, taken together, established only a suspicion of a nexus between the money and illegal drug activity. With regard to the drug dog alert, the court specifically noted that a drug dog alert on cash is not dispositive in a forfeiture case because a completely innocent person "could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past." *Id.*

As to the bundling of money into $100 packets, the Supreme Court noted that

"such an arrangement is equally consistent with an innocent person's attempt to simplify and promote precision in the counting of lawfully obtained funds." *Id.* at 500–501, 698 A.2d at 579. We believe that the same may be said of driving a borrowed car with a single key in the ignition. Although a state trooper may be trained to look for certain types of "clues" to illegal activity—such as using a single key or bundling cash—such observations are not necessarily "evidence" of drug trafficking if they are equally consistent with innocent behavior. *Marshall.*

Based on the Supreme Court's precedent in *Fontanez* and *Marshall,* where no criminal charges were filed in relation to the seized cash, and where prior drug history, bundled cash, a dog alert, and travel in a known drug zone were held insufficient to establish a nexus between seized money and illegal activity, we must also conclude that the evidence presented by the Commonwealth was insufficient to establish a nexus between the cash found in King's car and a violation of the Controlled Substance Act. As a result, the burden never shifted to King to demonstrate that he acquired the cash in a legitimate way, and the cash should be returned to King.[7]

Accordingly, we reverse.

Judge SIMPSON Dissents.

### ORDER

AND NOW, this 1st day of May, 2012, the July 15, 2011, order of the Court of Common Pleas of Monroe County is hereby reversed.

---

**7.** Because of our disposition of King's first argument, we need not address King's second argument that the currency was seized as the result of an illegal arrest performed without probable cause.