COMMONWEALTH of Pennsylvania

v.

The **ONE THOUSAND TWO HUNDRED AND TWENTY DOLLARS ($1,220.00) CASH, U.S. Currency Seized from Eric Cook, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2000.

Decided March 29, 2000.

Jason M. Walsh, Donora, for appellant.

Eugene A. Vittone II, Washington, for appellee.

Before COLINS, J., SMITH, J. and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Eric Cook appeals from the April 1, 1999 order of the Court of Common Pleas of Washington County (trial court) granting the Commonwealth's petition for forfeiture and condemnation of $1,220.00 in cash and a pager as derivative contraband. For the reasons that follow, we reverse the trial court's order.

On November 18, 1998, the Commonwealth filed a petition for forfeiture and condemnation of $1,220 in cash and a pager seized from Cook on February 7, 1997 and alleged to be derivative contraband. Cook filed an answer to the petition on December 10, 1998, alleging that (1) the Commonwealth's petition, filed one year and nine months after the seizure, was untimely; and (2) there was no nexus between the seized property and its involvement in any unlawful activity.

The trial court conducted a hearing on March 23, 1999 and adduced the following. On February 7, 1997, Officer Gonglik, a Bentleyville police officer, conducted a stop of a vehicle in which Cook was a passenger. Officer Gonglik conducted the stop in order to execute an outstanding warrant of arrest against Cook for an alleged probation violation. In addition, the officer had information concerning Cook from Detective Kavakich indicating that Cook had been in Bentleyville the prior weekend and frequently visited the area. Cook and the driver of the vehicle, John Fletcher, were known by the police to be engaged in selling controlled substances in Donora Borough.

Officer Gonglik arrested Cook on the warrant and then proceeded to search Cook's person. The officer seized the money and a pager. The money was divided into twelve packets, each totaling $100.00 and in denominations of $20.00. No drugs or drug paraphernalia were found.

Detective Kavakich, who is a full-time police officer with Bentleyville and a member of the Washington County District Attorney's Office Drug Task Force, testified that the possession of a pager and the method used for dividing the money was indicative of people engaged in the sale of illegal drugs. In addition, the detective conducted a "money scan" using a trained drug-sniffing canine. The dog "alerted" on the money taken from Cook, indicating the residual presence of cocaine, marijuana, heroin or derivatives thereof.

The trial court rejected Cook's argument that the Commonwealth's delay of one year and nine months in bringing the forfeiture action violated the "forthwith" requirement of Section 6801(c) of the Judicial Code, 42 Pa.C.S. § 6801(c). That subsection provides that where "seizure without process occurs, as provided herein, proceedings for the issuance thereof shall be instituted forthwith." The court stated that Cook established no prejudice as a result of the delay.

The court also rejected Cook's argument that there was no nexus between the currency seized and any illegal drug activity involving him. The court set forth six reasons why it concluded that the Commonwealth had met its burden of establishing by a preponderance of the evidence that the money was connected to drug activity: 1) the currency was bundled in a manner consistent with drug dealing; 2) the drug-sniffing dog "alerted" on the cash; 3) a pager, a device popularly used in drug activities, was found on Cook; 4) Cook was under investigation prior to the

seizure; 5) Cook had sold drugs to an undercover narcotics agent twice prior to the seizure;[1] and 6) Cook was in the company of John Fletcher, a known drug dealer.

Finally, the court rejected Cook's contention that the forfeiture petition should be denied because the police never charged him with any concurrent drug charges relating to the money and they never observed him engaged in any drug-related activity on the day in question. The court found that there was sufficient evidence to show probable cause in believing that the currency had been used or was intended to be used to facilitate drug-related activity.[2] Further, the court noted that the police seized the money incidental to serving Cook with a bench warrant.

■ Cook presents two issues: 1) whether the trial court erred in concluding that the Commonwealth did not violate the "forthwith" requirement by not bringing the forfeiture action against Cook until some twenty-two months after the seizure; and 2) whether the court erred in determining that the Commonwealth's evidence was sufficient to establish the required nexus between the property seized and any unlawful activity concerning Cook. Because we find the second issue to be dispositive, we address it first and need not reach the issue concerning the Commonwealth's delay in bringing the forfeiture proceeding.[3]

■ In forfeiture proceedings where money has been seized, the Common-

---

1. The record reflects that Cook sold drugs to Detective John R. Sweeney once before the February 7, 1997 seizure and once after. Respectively, those transactions took place on January 28, 1997 and February 18, 1997. (March 23, 1999 Hearing, N.T. at 29.) Detective Sweeney further testified that Cook pled guilty to the charges relating to those two transactions and that the trial court sentenced him to 5 to 23 months in the Washington County Jail as a result.

2. Section 6801(b)(4) of the Code provides that property may be seized where

there is probable cause to believe that the property has been used or is intended to be used in violation of The Controlled Substance, Drug, Device and Cosmetic Act. 42 Pa.C.S. § 6801(b)(4).

3. We are limited to determining whether the findings of fact made by the trial court are supported by competent evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth of Pennsylvania v. Marshall*, 548 Pa. 495, 698 A.2d 576 (1997).

wealth bears the initial burden of proving either 1) that the money was furnished or intended to be furnished in exchange for a controlled substance or represents the proceeds traceable to such an exchange; or 2) that the money was used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[4] *Marshall.* The Commonwealth must prove, by a preponderance of the evidence, the nexus between the money and illegal activity. "If the Commonwealth establishes the nexus, the burden shifts to the claimant to establish that he owns the money, that he lawfully acquired it, and that it was not unlawfully used or possessed by him." *Id.* at 499, 698 A.2d at 578.

Citing *Marshall,* Cook argues that the Commonwealth failed to establish a nexus between the money and any illegal activity. *Marshall* also involved money being handled in a matter consistent with illegal drug activity and a drug-sniffing dog "alerting" on the money. In addition to those two factors, the trial court in that case found the following factors to be sufficient to support its determination that the Commonwealth had established a nexus: Marshall had been unemployed for one and a half years before the arrest, he and the driver of the car gave inconsistent stories concerning the ownership of the money, the money was found between the seat cushions and Marshall's testimony was not credible. The Commonwealth Court affirmed the trial court's decision ordering the money to be forfeited, but the Supreme Court reversed this Court's decision.

Specifically, the Supreme Court in *Marshall* concluded that, although the money was bundled consistent with a drug dealer and the dog alerted on the money, those factors were insufficient to sustain the

Commonwealth's burden of proof. The Court stated that the bundling could be an innocent person's way of simplifying and counting lawfully obtained money and that many innocent people could be carrying around money that has been involved in a drug transaction. In addition, Marshall had never been arrested on drug charges, had no prior convictions of any kind and no drugs or drug paraphernalia were discovered in the car in which he was riding or on the persons of Marshall and his two companions.

The Commonwealth argues that *Marshall* is distinguishable from the case at bar because the police also took a pager from Cook, Cook was under investigation for drug sales just prior to the seizure, had sold crack cocaine to an undercover officer twice some three months prior and was in the company of a known drug dealer. Thus, it contends that, given the different circumstances, the instant case is simply not on all fours with *Marshall.*

Although it is true that the facts of *Marshall* and the case at bar are not identical, we conclude that *Marshall* is persuasive precedent for reversing the trial court's order, especially in light of the Supreme Court's recent pronouncement in *Commonwealth of Pennsylvania v. Fontanez,* 559 Pa. 92, 739 A.2d 152 (1999).[5] In *Fontanez,* the Philadelphia police stopped Fontanez after he disregarded a traffic signal. Upon observing an open paper bag full of cash on the floor of the car and receiving no answers to his questions about the money, the officer took Fontanez and the $2,650.00 in cash into custody. At police headquarters, a dog "alerted" on the cash. Though charged, Fontanez was never convicted of any drug-related charges stemming from that incident.

Fontanez brought an action for return of the currency the same month that it was

---

**4.** Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

**5.** After both parties filed their briefs in this matter, the Supreme Court reversed this Court's decision in *Fontanez* and remanded

the case to the trial court for entry of an order granting the petition for return of property. *See Commonwealth of Pennsylvania v. Fontanez,* 679 A.2d 1361 (Pa.Cmwlth.1996).

seized. *Inter alia,* the Commonwealth Court held that (1) he failed to show that the currency was seized as a result of an illegal arrest and without probable cause as would support the return of the property; (2) he failed to show that the two and one-half years delay between the seizure and the Commonwealth's petition for forfeiture was unjustified or prejudicial; and (3) the evidence was sufficient to establish the required nexus between the currency and illegal drug activity. As to that last conclusion, this Court determined that the trial court properly considered Fontanez's subsequent arrest under almost identical circumstances and the alleged involvement of his relatives in illegal drug trafficking. We concluded that was enough to establish that the money and been used or intended to be used to facilitate violations of the Drug Act.

The Supreme Court reversed our decision, concluding that the Commonwealth failed as a matter of law to sustain its burden of proving that the money was contraband. The Court rejected the circumstances surrounding the seizure as sufficient grounds for a nexus. These grounds included the late hour, (as the Court noted, it was only 8:30 p.m.), the location of the stop, the large amount of cash involved, the officer's familiarity with Fontanez and his family and his refusal to offer an explanation for why he had the money. The Court noted that, although the presence of that amount of money might give rise to suspicions, at most those suspicions should have lead to further investigation or surveillance. Further, the Court noted that someone stopped for a traffic violation has no obligation to respond to questions apart from the statutory obligations of producing a driver's license, registration and proof of insurance. The Court stated that to hold otherwise would essentially prevent a person from carrying any substantial amount of money at night, even in his own neighborhood, without the risk that the police would seize it, regardless of whether the police witnessed any suspicious activity.

In addition, the Supreme Court in *Fontanez* rejected the Commonwealth's argument that several circumstances, which developed after the seizure, demonstrated the money's contraband character. Specifically, the Court noted that the fact that the drug-sniffing dog had "alerted" to the money added little or no support to the case because the police admitted that there was no way of telling whether one dollar or all of the money had been exposed to narcotics and when the money may have been exposed to narcotics. Also, the fact that Fontanez was arrested for illegally transporting drugs two months after the seizure added little or no support because those charges were dismissed at a preliminary hearing. Unproven allegations that a person transported drugs at a later date shed no light on whether money possessed by that same person, at a time when he undisputedly did not have narcotics, might be considered contraband.

■ Based on the Supreme Court's analysis and holdings in *Marshall* and *Fontanez,* we must conclude in the case at bar that the trial court erred in ruling that the Commonwealth established a sufficient nexus between any illegal activity and the $1,220.00 in cash and the pager. As a matter of law, it is simply not enough to show that a drug-sniffing dog alerted on the money, that the money was bundled consistent with a drug dealer, that the police officer was familiar with Cook and his companion, that Cook had a pager in his possession, that Cook was under investigation and that he had previously sold drugs to an undercover officer. As the Supreme Court stated in *Fontanez,* the officer's suspicions merited further investigation or surveillance, but not seizure. In addition, we would note that the police never charged Cook with any concurrent drug charges relating to the money and never observed him engaged in drug-related activity on the day in question.

Accordingly, for the above reasons, we reverse the order of the trial court grant-

ing the Commonwealth's petition for forfeiture and condemnation of the $1,220.00 in cash and the pager.

O R D E R

AND NOW, this 29th day of March, 2000, the April 1, 1999 order of the Court of Common Pleas of Washington County is hereby reversed.