**COMMONWEALTH of Pennsylvania**

v.

**$11,600.00 CASH, U.S. CURRENCY.**

**Appeal of Christian Maracine.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 23, 2004.
Decided Sept. 13, 2004.

Gary L. Dorsett, Reading, for appellant.

Douglas J. Waltman, Jr., Reading, for appellee.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION by Judge McGINLEY.

Cristian Maracine (Maracine) appeals from the order of the Court of Common Pleas of Berks County (trial court) granting the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture of property in the form of $11,600 in currency, pursuant to Sections 6801–02 of the Judicial Code, 42 Pa.C.S. §§ 6801–02, com-

monly referred to as the Controlled Substances Forfeiture Act (Forfeiture Act).[1]

The facts giving rise to this forfeiture proceeding are as follows: On November 13, 2001, at approximately 11:00 p.m., Officer Paul Baur (Officer Baur) of the Wyomissing Police Department stopped Maracine's vehicle because the windows appeared to be illegally tinted. Notes of Testimony, October 9, 2003 (N.T.) at 6, 61.[2] During the stop, Officer Baur discovered that Maracine had 12 outstanding scofflaw warrants for his arrest.

Maracine was taken into custody and searched. Officer Baur found large bundles of money in every pocket of his pants, front and back, and his coat. N.T. at 19. When Officer Baur asked "What's this?" Maracine replied "It's money." N.T. at 6. Officer Baur asked Maracine where he got all the money, and Maracine stated that "he worked for Paolo's Pizza" and that he "was just coming from there." N.T. at 6–7. Officer Baur asked Maracine how much he made, and Maracine stated that he made "$450 a week." Id. Maracine told Officer Baur that he was going to buy a car that day, but "did not get a chance to buy it." Id. Maracine stated that he had a checking account and a savings account but he "felt like paying cash" for the car. When Officer Baur asked "Well, how much money do you have here?" Maracine said "I have about 8 or 9,000." N.T. at 7. Officer Baur counted the money, and there was $11,600, which was $2,600 or $3,600 more than Maracine said. Id.

After initially stating that all of the money was his and that he saved it for a long time working for Paolo's Pizza, Maracine later told Officer Baur that $2,000 was a loan from his father. N.T. at 16, 19–20. According to Officer Baur, Maracine was very nervous, and kept getting out of the car and walking back and asking if his girlfriend could remove the vehicle from the scene. N.T. at 23. Officer Baur arrested Maracine on the outstanding warrants and seized the money from Maracine's pockets.

On May 21, 2002, the Commonwealth filed a petition for forfeiture of $11,600 in currency as the proceeds from the sale of controlled substances. A rule was entered on June 3, 2002, upon Maracine to show cause why the petition should not be granted. On July 3, 2002, Maracine filed an answer. A hearing was held on October 9, 2003.

The Commonwealth presented the testimony of Officer Baur and First Sergeant Randy Wasserleben (Sergeant Wasserleben), the supervisor of the ion scan teams for the National Guard Counterdrug Unit. Sergeant Wasserleben testified that he performed an ion scan on the money to test for the presence of illegal narcotic particles. Sergeant Wasserleben explained that when dealers package cocaine, they get traces of cocaine on the outside of packages, on their hands and on the money they handle. N.T. at 52–53. According to Sergeant Wasserleben, the money seized from Maracine had high amounts of cocaine on it. N.T. at 41. He testified that money tested randomly from banks in Pennsylvania which represent "casual contact," register at about 234 digital units. Sergeant Wasserleben testified that the money seized from Maracine registered

1. Maracine improperly filed his appeal with the Superior Court, which transferred the case to this Court on February 20, 2004.

2. Maracine included the condensed version of the hearing transcript in the Reproduced Record. However, contrary to Rule 2173 of Pennsylvania's Rules of Appellate Procedure, he failed to separately number the pages. Therefore, this Court must cite directly to the hearing transcript.

approximately five times that amount at 1,028 digital units for "cocaine" and 1,302 digital units for "cocaine high." N.T. at 39.

Sergeant Wasserleben testified that there was no indication that any of the bills was used for snorting cocaine, because none of the bills was rolled in a tube or creased. N.T. at 49. He testified that the chances of one of the bills rolled into a tube to snort cocaine transferring some of the cocaine on to the other bills was slim, and that he tests the money from only the edges of all the bills to obtain a collective sample. N.T. at 50, 56. In his opinion, to a reasonable degree of scientific certainty, the money was in recent contact with large amounts of cocaine. N.T. at 41, 55.

The Commonwealth also offered into evidence Maracine's tax return for 2001 which showed that he made $3,000 from Paolo's Pizza for the entire year.

At the conclusion of the hearing, the trial court granted the Commonwealth's petition for forfeiture. The trial court concluded that the Commonwealth carried its burden by a preponderance of the evidence and showed that the cash was in close proximity to the controlled substance, that cocaine was actually found *on* the cash, that there was a large amount of money found in bundles stuffed in every pocket and that Maracine did not make that amount of money from his job at the pizza shop, as he told Officer Baur. Trial Court Opinion, December 22, 2003, at 5. The trial court further found that Maracine failed to rebut the presumption that the cash was derived from the sale of a controlled substance.

Maracine raises two issues on appeal[3]: (1) whether the trial court erred in concluding that the Commonwealth provided sufficient evidence to warrant the forfeiture of the $11,600? and (2) whether the trial court erred in relying on *Commonwealth v. $16,208.38, U.S. Currency*, 160 Pa.Cmwlth. 440, 635 A.2d 233 (1993), *appeal denied*, 538 Pa. 634, 647 A.2d 509 (1994), since that case involved marijuana, and not cocaine?

The Forfeiture Act,[4] 42 Pa.C.S. § 6801(a), permits the forfeiture of money exchanged for drugs or used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act). 35 P.S. § 780–113.[5] *Commonwealth v.*

---

**3.** This Court's review in an appeal from a forfeiture proceeding is limited to examining whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. 648 West Mayfield Street*, 819 A.2d 1226 (Pa.Cmwlth.2003); *Commonwealth v. Real Prop. & Improvements Commonly Known as 5444 Spruce St.*, 574 Pa. 423, 832 A.2d 396 (2003). It is axiomatic that as factfinder the trial court is empowered to decide what evidence is credible and to draw any reasonable inferences from all of the evidence. *Commonwealth v. Fidelity Bank Accounts*, 158 Pa. Cmwlth. 109, 631 A.2d 710 (1993).

**4.** The Forfeiture Act provides in relevant part:
(a) Forfeitures generally. The following shall be subject to forfeiture to the Com-

monwealth and property right shall exist in them:
. . . .
(6)(i) All of the following:
(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.
(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

**5.** Act of April 14, 1972, P.L. 233 *as amended.*

*McJett*, 811 A.2d 104 (Pa.Cmwlth.2002), *appeal denied*, 574 Pa. 749, 829 A.2d 1158 (2003). In a forfeiture case, the Commonwealth bears the burden of establishing by a preponderance of the evidence that a nexus exists between the pertinent unlawful activity and the property subject to forfeiture. *Commonwealth v. All That Certain Parcel and Lot of Land Located at 4029 Beale Avenue, Altoona, Blair County, Pennsylvania*, 545 Pa. 172, 680 A.2d 1128 (1996). Preponderance of the evidence is tantamount to a "more likely than not" standard. *Commonwealth v. $32,950 U.S. Currency*, 160 Pa.Cmwlth. 58, 634 A.2d 697, 698 n. 9 (1993), *appeal denied sub nom., Commonwealth v. Friel*, 538 Pa. 637, 647 A.2d 512 (1994). Once the Commonwealth has sustained its burden, the burden of proof shifts to the property owner to prove (1) that he is the owner of the money; (2) that he lawfully acquired the money; and (3) that the money was not unlawfully used or possessed by him. *$16,208.38 U.S. Currency*, 635 A.2d at 238.

■ In this case, the record and reasonable inferences drawn from the evidence support the trial court's finding that the $11,600 seized from Maracine was, more likely than not, used in drug trafficking operations or were the proceeds of such operations and, as such, support the trial court's decision upholding the forfeiture of Maracine's property.

The Commonwealth offered the testimony of Officer Baur who testified that Maracine made inconsistent statements about the origin of the money, and underestimated by $2,600–$3,600 how much he actually possessed. According to the Commonwealth's unrebutted expert testimony, the money had a high concentration of cocaine on it, five times the amount found on money in the general circulation. Maracine provided no support for his assertion that he obtained the money as a loan from his father, and offered no admissible evidence to establish a legitimate source for such a large amount of cash, particularly when his tax return reflected earnings of only $3,000 in 2001.[6]

Our Supreme Court has determined under similar, but distinguishable, facts when the evidence is sufficient to establish a nexus between the currency and alleged drug transactions. In *Commonwealth v. Marshall*, 548 Pa. 495, 698 A.2d 576 (1997), Floyd Marshall (Marshall) was asleep in the back seat of a car stopped for speeding. After the trooper learned there were outstanding arrest warrants for the driver, the front seat passenger and for Marshall, he asked them all to step out of the car. When Marshall got out of the car, the trooper noticed that there were packets of money stuffed between the seats. Marshall and the driver gave conflicting statements regarding the ownership of the money. When the trooper searched the car, he found $3,400 in various denominations, divided into $100 packets. The trooper conducted a test with a drug sniffing dog. The dog "alerted" on the currency, indicating the residual presence of cocaine, marijuana, hashish or heroin. *Marshall*, 548 Pa. at 497, 698 A.2d at 578.

6. On page 10 of his Brief, Maracine cites to page 17 of the hearing transcript and states that "he advised the officer that he had the money so that he could purchase a vehicle *the following day*." (Emphasis added). Actually, that testimony does not appear on page 17, and Maracine's rendition of Officer Baur's testimony regarding the reason why Maracine stated he was carrying that amount of cash is not entirely accurate. Contrary to Maracine's contention, Officer Baur testified that Maracine told him he had the cash because he intended to purchase a car *that day, but did not get a chance to*. N.T. at 7. (Emphasis added).

Marshall filed a motion for the return of the money. At the forfeiture hearing, the Commonwealth presented evidence that (1) Marshall had been unemployed for 1–1/2 years prior to his arrest; (2) Marshall and the driver of the car gave inconsistent statements; (3) the money was bundled in a manner consistent with drug dealing and was found between the seat cushions; and (4) the drug sniffing dog "alerted" on the cash. *Marshall,* 548 Pa. at 499, 698 A.2d at 578–579. The Court of Common Pleas of Chester County concluded that the evidence presented was sufficient to sustain the Commonwealth's burden under 42 Pa. C.S. § 6801(a). On appeal, this Court affirmed. The Supreme Court reversed holding that the evidence proved nothing more than the "possibility" or the "suspicion" of a nexus between the money and some type of drug activity. *Marshall,* 548 Pa. at 499, 698 A.2d at 579. The Supreme Court stated:

A completely innocent citizen of … could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past. The fact that … Appellant found himself in the possession of one, or several, such bills of currency is insufficient to sustain the Commonwealth's clearly established burden to prove at the outset that the money seized has a nexus to some unlawful activity on the part of Appellant. Even when considered in conjunction with all the other facts relied upon by the trial court in this case, the residual presence of drugs on some part of the $3,400.00 in question establishes only the possibility or the suspicion of a nexus between the money and some type of drug activity.

*Id.* at 500, 698 A.2d at 579.

This case is distinguishable from *Marshall.* In *Marshall,* a drug sniffing dog merely detected *the odor* of a controlled substance on the money which indicated the residual presence of drugs on some part of the $3,400. Here, there was unrebutted expert testimony which established the actual physical presence of cocaine on the money in quantifiable terms. The evidence offered by the Commonwealth also showed that the quantity of cocaine on the money was *five times* more than that found on bills in general circulation. Unlike in *Marshall,* the expert testimony presented by Sergeant Wasserleben which was accepted by the common pleas court *negated an inference of casual contact.* Sergeant Wasserleben testified:

Q. Now, do you ever come on an occasion where known money that is not drug related at all tests positive for cocaine particles or casual contact?

A. Yes.

Q. Could you explain what causal contact means?

A. Casual contact is—we go into local banks in the communities where we work. And we collect samples from currency. When we go into a bank, we ask for money that's not from the federal mint, it came from the local community. And we ask for at least four bundles of each denominations, fives through one hundreds and—

Q. And that's tested for the presence of illegal narcotic particles?

A. Correct. And when we analyze the samples, we set cocaine at 100 digital units so it will alarm at a much lower rate than what we actually operate on because we want to see what's in the community.

Q. So is there a standard or any reference point or baseline that you use that, for instance, money in any given individual's pocket may alarm to the presence of cocaine at a certain level?

A. Yes. **Casual contact in Pennsylvania is 234 digital units.**

Q. **And what did this alarm at?**

A. **This alarmed at 1,028 digital units for cocaine, and 1,302 digital units for cocaine high.**

. . . .

Q. **Okay. Sergeant, based on your testing of the samples in this case, do you have an opinion again to a reasonable degree of scientific certainty as to whether or not there was a significant level of cocaine residue on the currency that you tested?**

A. **Yes. There's about five times the amount of casual contact on the currency.** (Emphasis added).

N.T. at 38–42.

The Commonwealth's expert specifically accounted for the possibility of casual contact but discounted it using the ion scan test results. Thus, unlike in *Marshall*, an inference that the money in Maracine's possession "happened to be involved in a drug transaction at some unknown time in the past" would not have been *reasonable*.

■ Once the Commonwealth met its burden and showed that the money was unlawfully related to cocaine possession or sales it was Maracine's burden to introduce sufficient evidence to rebut this presumption. *In re Commonwealth, $803 Cash, U.S. Currency*, 403 Pa.Super. 526, 589 A.2d 735 (1991). Maracine offered no evidence whatsoever at the forfeiture hearing.[7] Maracine failed to rebut the expert opinion of Sergeant Wasserleben, and neither did he object to Officer Wasserleben's qualifications as an operator of the ion scan machine, nor object to the use of the ion scan machine to test the currency. In fact, Maracine concedes that "the technique involved in performing the ion scan is not complicated and everything you need to know about setting up the machine, collecting samples, analyzing the sample, and interpreting the results can be learned in a three (3) day training period." Maracine's Brief at 8.

■ Maracine argues that there was no evidence of drugs found on him or in his vehicle, and citing to the dissent in *Commonwealth v. McJett*, incorrectly states in his Brief that "there must be a direct link between the money and a [s]pecific drug transaction." Maracine's Brief at 10. Contrary to Maracine's contention, the fact that Maracine was not arrested for drug related activity, and no drugs or drug paraphernalia were discovered in the car in which Maracine was riding, or on his person is not dispositive of the issue. It is axiomatic, that the Commonwealth need not produce evidence *directly* linking seized property to illegal activity in order to establish, by a preponderance of the evidence, the requisite nexus between seized property and unlawful activity. *Commonwealth v. McJett*, 811 A.2d at 110. The Commonwealth's evidence sufficiently proved that the money, which had five times the amount of cocaine than that found on money in the general circulation, was "furnished . . . in exchange for a controlled substance . . ., [or represented the] **proceeds traceable to such an ex-**

---

7. On page 8 of his Brief, Maracine argues that "[d]espite the fact that the sample had traces of Cocaine residue several times higher than might occur during casual contact on the money . . . he was never asked whether he used cocaine." Apparently, Maracine is suggesting that if he was asked, he would have answered in the affirmative thereby providing an alternative explanation for such a high concentration of cocaine on the money. However, Maracine did not testify at the forfeiture hearing. Surely, if Maracine believed that testimony would have bolstered his case he should have offered it instead of complaining that he was not asked *by Commonwealth's counsel.*

change." 42 Pa.C.S. § 6801(a)(6)(i)(A) (Emphasis added). *See also In re Commonwealth, $803 Cash, U.S. Currency,* (drug residue found on seized money was sufficient to support an inference that the funds had been part of an illegal drug transaction and were therefore subject to forfeiture). Moreover, for property to be seized and forfeited, neither a criminal prosecution nor a conviction is required. *Commonwealth v. 502–504 Gordon St.,* 147 Pa.Cmwlth. 330, 607 A.2d 839 (1992), affirmed, 535 Pa. 515, 636 A.2d 626 (1994); *Commonwealth v. One 1988 Ford Coupe,* 393 Pa.Super. 320, 574 A.2d 631, 633 n. 2 (1990); *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Commonwealth v.1978 Toyota,* 321 Pa.Super. 549, 468 A.2d 1125 (1983).

In his second issue, Maracine argues that the trial court erred in relying on *Commonwealth v. $16,208.38 U.S. Currency* because that case involved marijuana and not cocaine. This Court does not agree. *Commonwealth v. $16,208.38 U.S. Currency* is valid law, and has been cited by our Courts in cases which did not involve marijuana. *See e.g., Commonwealth v. $1,800 U.S. Currency,* 679 A.2d 275, 277 (Pa.Cmwlth.1996) (case involving cocaine); *Com. v. Alston,* 722 A.2d 161, 165 (Pa.Super.1998) (case involving cocaine).

In *Commonwealth v. $16,208.38,* Isiah Holt (Holt) conceded at the forfeiture hearing that the $16,208.38 in currency seized by officers was stored in close proximity to two and a half pounds of marijuana and did not contest that the Commonwealth *prima facie* established that the money was subject to forfeiture. In attempting to meet his burden of rebutting this presumption, Holt testified that he worked as a construction worker for 25 years, earned $13,549 to $20,229 per year in the previous three years, and that he had made regular deposits to his bank accounts. The Court held that this evidence was inconsistent with the amount of income reported on his tax returns, and did not believe that Holt accumulated such a vast savings based on his modest income. 635 A.2d at 238–239. The Court concluded that Holt did not produce any evidence of a legitimate source for the money found in his house and, consequently, failed to meet his burden to rebut the Commonwealth's evidence.

Here, the trial court found that the Commonwealth's *prima facie* case established that the money was subject to forfeiture, and that Maracine, like the claimant in *Commonwealth v. $16,208.38 U.S. Currency,* failed to meet his burden. As the Commonwealth correctly points out, the controlled substances which may support the forfeiture of property possessed in a nexus to violations of the Controlled Substance Act range from acetylmethadol to salts of isomers of tetrahydrocannabinols and beyond. There is simply no rational ground to assert that the legal principles applied to establish a nexus between property and unlawful activity exists differs simply because of the controlled substance involved. This Court finds no error in the trial court's reliance on *Commonwealth v. $16,208.38 U.S. Currency* in support of its decision.

For the foregoing reasons, this Court affirms the order of the trial court granting the Commonwealth's petition for forfeiture.

### ORDER

AND NOW, this 13th day of September, 2004, the order of the Court of Common Pleas of Berks County in the above captioned matter is affirmed.

KELLEY, Senior Judge, files a dissenting opinion.

Senior Judge KELLEY, dissenting.

In regard to the majority's interpretation of *Commonwealth v. Marshall*, 548 Pa. 495, 698 A.2d 576 (1997), and in regards to that precedent's application to the substantively identical facts of the instant matter, I respectfully dissent.

The majority's analysis of *Marshall* centers completely and solely on the *quality* of the evidence *linking the cash to past drug activity*—namely, in *Marshall* only a drug dog's alert connected the cash to prior drug activity, while in the instant matter, significant objective clinical evidence, and expert testimony, established more of a qualitative connection of the cash to drug activity. However, in *Marshall*, it was not the sufficiency of the evidence of the drug/cash nexus that formed the basis of the Supreme Court's decision—it was the complete and total lack of any evidence linking the drug-related cash to any illegal drug activity *on the part of that petitioner* upon which that case turned. *Marshall's* express analysis makes clear that, regardless of the strength of the connection between the seized cash and prior drug activity, the absence of any evidence whatsoever linking the drug-related cash to *any* illegal activity on the part of the petitioner— under additional parallel facts that very closely mirror those in the instant matter—is insufficient to meet the Commonwealth's burden. The following passage from *Marshall*—which includes the portion excerpted by the majority but provides more factual context equally applicable to this matter-indicates this subtle but important distinction between the sufficiency of the evidence linking the cash to drug activity, and the sufficiency of the evidence linking the petitioner to any drug activity:

> In the instant case, the trial court found the following facts sufficient to support the conclusion that the money in question was connected to drug activity: 1) Appellant had been unemployed for 1-1/2 years prior to the arrest; 2) Appellant and the driver of the car gave inconsistent stories concerning the ownership of the money; 3) the currency was bundled in a manner consistent with drug dealing and was found between the seat cushions; 4) the drug-sniffing dog alerted on the cash; and 5) Appellant's testimony was not credible.

The trial court erred in concluding on these facts that the Commonwealth had met its burden under 42 Pa.C.S. § 6801(a). **Although the Commonwealth is not required to directly link the property in question to the illegal activity, we are unable to conclude in this case that the Commonwealth has proven anything more than the suspicion of a possible nexus between the $3,400.00 and some type of drug activity.**

It is undisputed that no drugs or drug paraphernalia were discovered in the car in which Appellant was riding, or on the persons of Appellant or his two companions. Moreover, Appellant gave uncontested testimony that he had never been arrested on drug charges and had no prior convictions of any kind. See N.T. at 7a–8a. And, although the $3,400.00 was bundled in a way drug dealers have been known to arrange their money, such an arrangement is equally consistent with an innocent person's attempt to simplify and promote precision in the counting of lawfully obtained funds.

**The fact that the drug-sniffing dog alerted on the cash is also not dispositive of the issue. A completely innocent citizen of this Commonwealth could have in his or her possession, at any time, currency that happened to be involved in a drug transaction at some unknown time in the past. The**

fact that on August 10, 1993 Appellant found himself in the possession of one, or several, such bills of currency is insufficient to sustain the Commonwealth's clearly established burden to prove at the outset that the money seized has a nexus to some unlawful activity *on the part of Appellant.* Even when considered in conjunction with all the other facts relied upon by the trial court in this case, the residual presence of drugs on some part of the $3,400.00 in question establishes only the possibility or the suspicion of a nexus between the money and some type of drug activity.

The trial court therefore erred in concluding that the Commonwealth had presented evidence sufficient to meet its burden under 42 Pa.C.S. § 6801(a).

*Marshall,* 548 Pa. at 499–501, 698 A.2d at 578–579 (footnotes and citations omitted; emphasis supplied).

As in *Marshall,* the drug residue on the cash in the matter *sub judice* is irrelevant to the disposition of this case. Under *Marshall,* the complete lack of any evidence whatsoever in this case linking Maracine to any illegal activity that may be inferred from the residue-laden cash is insufficient to satisfy the Commonwealth's burden. Additionally—and mirroring the

operative facts in *Marshall*—the trial court's reliance on the facts of Maracine's employment history, his lack of sufficient income, his inconsistent statements, and his bundling of the money, are all collectively insufficient to satisfy the Commonwealth's burden absent any evidence linking Maracine to the inferred drug activity that has been linked to the cash.

Despite the stronger evidentiary link between the seized cash and inferred prior drug activity that distinguishes this case from *Marshall,* no evidence of record establishes any link between Maracine and any drug activity. The majority has failed to address the actual basis of the Supreme Court's disposition in *Marshall,* and has instead founded its disposition of this matter on a stronger evidentiary link that, while distinguishable from the strength of the comparable evidence in *Marshall,* nonetheless did not form any foundational part of the ultimate disposition in that precedent.[1]

I would reverse.

---

1. *Accord: Commonwealth v. Fontanez,* 559 Pa. 92, 739 A.2d 152, (1999) (Drug sniffing dog's alert to cash seized from petitioner, which alert signified residual presence of drugs upon the seized cash, added little or nothing in support of the Commonwealth's argument that the money seized in this case was contraband, due to the fact that there was no way of telling whether one dollar or all of the money in the drawer had been exposed to narcotics, and, more importantly, there was no way of telling *when* the money may have been exposed to narcotics in the absence of any evidence linking petitioner to drug activity.); *Commonwealth v. One Thousand Two Hundred and Twenty Dollars ($1,220.00) Cash,* 749 A.2d 1013 (Pa.Cmwlth.),

*petition for allowance of appeal denied,* 563 Pa. 704, 761 A.2d 551 (2000) (Drug-sniffing dog's alert on seized money, even when coupled with additional facts that the money was bundled consistent with a drug dealer, that police officer was familiar with claimant and his companion, that claimant had a pager in his possession, that claimant was under investigation, and that claimant previously sold drugs to an undercover officer, was insufficient to establish a nexus between illegal drug activity and $1,220 in cash and a pager seized from defendant, as required for forfeiture of the items, where police never charged claimant with any concurrent drug charges relating to the money and never observed him en-

gaged in drug-related activity on the day the    items were seized.)