**COMMONWEALTH of Pennsylvania**

v.

**$15,000 U.S. CURRENCY.**

**Appeal of: Dalayna Williams.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 16, 2011.

Decided Nov. 17, 2011.

Michael A. Ventrella, Tannersville, for appellant.

Andrea F. McKenna, Senior Deputy Attorney General, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Dalayna Williams (Williams) appeals the April 4, 2011 order of the Court of Com-

mon Pleas of Monroe County (trial court), which granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture of Williams' claim of right, title, or interest in $15,000.00 found in a rental car rented in Williams' name,[1] pursuant to what is commonly known as The Controlled Substance Forfeiture Act (Forfeiture Act), 42 Pa.C.S. §§ 6801–6802. For the reasons that follow, we reverse the trial court.

The Commonwealth seized the property in question on March 17, 2010, when the Pennsylvania State Police (PSP) conducted a search of the rental car. On October 22, 2010, the Attorney General of the Commonwealth of Pennsylvania filed a petition for forfeiture with the trial court, alleging that the seized cash should be condemned and forfeited to the Commonwealth because no legal right, title, or interest exists in it by any owners or possessors of it pursuant to Section 6801(a) of the Forfeiture Act, 42 Pa.C.S. § 6801(a). (Certified Record (C.R.), Item No. 10.) On October 26, 2010, the trial court issued a Rule to Show Cause, advising Williams that she was required to file an answer within thirty (30) days, setting forth why the Commonwealth should not be entitled to forfeiture. (R.R. at 4a.) On November 23, 2010, Williams responded to the Commonwealth's petition for forfeiture, maintaining that the Commonwealth's petition should be denied because the Commonwealth failed to show a nexus between any criminal activity and the $15,000.00 confiscated from the rental car. (Id. at 6a.)

At the April 4, 2011 forfeiture hearing, the Commonwealth presented testimony of Pennsylvania State Trooper Mark Conrad in support of its petition for forfeiture. (R.R. at 14a.) Trooper Conrad testified that he executed a traffic stop on Interstate 80 eastbound in Pocono Township for speeding. (Id. at 16a.) During the stop, he made contact with the driver, Norman Caldwell (Caldwell), and the passenger, Marcus Shannon (Shannon), who were traveling from the Syracuse, New York area to the New York City or New Jersey area. (Id.) Trooper Conrad testified that both men had suspended driver's licenses and were in a vehicle rented by a third party without the renter (Williams) present. (Id.) Trooper Conrad further testified that the rental agreement had expired and that both men were very nervous. (Id.) Trooper Conrad testified that while both men told him that they were "visiting a girl in Jersey," no luggage existed to support an overnight stay. (Id.) Subsequently, according to Trooper Conrad's testimony, Trooper Conrad ran a criminal history on both men, which revealed recent drug possession and distribution histories in upstate New York. (Id. at 17a.) Trooper Conrad testified that after this discovery, he contacted the rental company, which informed him that Williams rented the vehicle and that the rental agreement had been violated. (Id.) Trooper Conrad further testified that after obtaining this information, he called for backup. When State Trooper Nick Cortes arrived on the scene, he informed Trooper Conrad that he was familiar with Caldwell. (Id. at 18a.) According to Trooper Conrad's testimony, Trooper Cortes further informed Trooper Conrad that Caldwell was a passenger in another instance where the PSP seized $30,000.00 from a hidden steering wheel compartment. (Id.) Trooper Conrad testified that subsequent to learning this information, he conducted a consensual vehicle search and ultimately recovered $15,000.00, concealed under the back seat of the vehicle bundled in one thousand dollar increments. (Id. at 18a–20a.)

---

1. Reproduced Record (R.R.) at 17a, Transcript of Hearing conducted April 4, 2011.

Trooper Conrad testified that in his training and experience, drug money is "always" bundled in one thousand dollar increments. (*Id.* at 19a.)

Both men seemed very shocked and surprised upon the discovery of the money, and both disclaimed ownership of the money, according to Trooper Conrad's testimony. (*Id.* at 23a.) Within a few minutes, Trooper Conrad testified that Caldwell handed him a cellular phone and a female identified herself as Williams on the other end. (*Id.*) Williams informed Trooper Conrad of the money in the car. (*Id.*) Trooper Conrad testified that Williams further informed him where the money could be found in the vehicle and the amount [2] of money contained in the vehicle. (*Id.*) Trooper Conrad further testified that Williams informed him that Caldwell's responsibility was to drive the money to her in New Jersey. (*Id.*) Trooper Conrad did not cite or charge Caldwell or Shannon in relation to the incident. (*Id.* at 28a.) Trooper Conrad testified that after he confiscated the money, the money was taken to the State Police barracks in Swiftwater, Pennsylvania, where a canine scan showed a positive result for illegal narcotics. (*Id.* at 24a, 26a.) Finally, Trooper Conrad testified that the bag, which contained the money, emitted a very strong odor of marijuana when opened. (*Id.* at 27a.)

The Commonwealth also presented the testimony of Corporal Thomas Appleman in support of its petition for forfeiture. Corporal Appleman testified that he assisted the Commonwealth in forfeiture investigations for seizures of currency or controlled substances. (*Id.* at 30a.) Corporal Appleman testified that he assisted in the current seizure along with another officer, Sergeant Jost, who conducted an ion scan of the money. (*Id.* at 32a.) Corporal Appleman testified that Sergeant Jost used a "sort of vacuum cleaner instrument" to test the money in question for controlled substances. (*Id.*) More specifically, Corporal Appleman testified that he (Corporal Appleman) opened the package containing the money, removed the rubber bands from the money, and fanned out the money like a "deck of cards" to prepare the money for testing. (*Id.* at 32a–33a.) Corporal Appleman further testified that the money was folded in half in one thousand dollar increments. (*Id.*) Finally, Corporal Appleman testified that the money tested positive for cocaine residue. (*Id.* at 34a.)

At the hearing, Williams appeared on her own behalf and testified that the $15,000.00 in question belonged to her and that it was not linked to any drug activity. (*Id.* at 45a.) Williams also testified that the money confiscated from the vehicle had been saved through the years from her job. (*Id.* at 57a.) Williams testified that she planned to use the money in the vehicle to buy a car in New Jersey, and, while she initially told Trooper Conrad that it was Caldwell's responsibility to transport the money to her to purchase the vehicle, she testified that Caldwell did not have permission to use the rental car. (*Id.* at 47a.) Williams further testified that she was on a work-related trip in Delaware and had planned on going to New Jersey to meet Caldwell to purchase the new vehicle. (*Id.* at 54a.) However, Williams later contradicted that testimony by testifying that she planned on returning to Syracuse, New York, to return the rental car prior to traveling to New Jersey to purchase the new vehicle. (*Id.* at 56a.)

---

**2.** We note that Trooper Conrad testified that Williams indicated that $16,000.00, not $15,000.00, was in the vehicle.

On April 4, 2011, the trial court granted the Commonwealth's petition for forfeiture. (*Id.* at 64a.) Williams appealed the trial court's order to this Court. In its Pa. R.A.P. 1925(b) opinion, the trial court explained that it accepted the testimony of Trooper Conrad as credible regarding his actions and observations of the traffic stop. (Trial Court's 1925(b) Opinion, attached to Appellant's Brief as Appendix B, p. 3.) The trial court acknowledged that the ion scan yielded a positive result for cocaine residue. (*Id.*) The trial court explained, however, that the ion scan was irrelevant and inadmissible pursuant to this Court's decision in *Commonwealth v. $9,000.00 U.S. Currency*, 8 A.3d 379 (Pa.Cmwlth.2010) (*Collins*), in which we held that an ion scan test is irrelevant when it fails to show that the money's casual contact level was obtained from the relevant geographic areas in question. (*Id.*) Here, therefore, the trial court reasoned that because both parties in the vehicle were residents of New York and the vehicle was rented in New York, there was no evidence that the seized money ever circulated within Pennsylvania and Pennsylvania's casual contact level could not be used as a comparison with the seized money. (*Id.*) Nevertheless, the trial court found that the Commonwealth proved a nexus between the seized currency and illegal drug activity based on the totality of the circumstances. (*Id.*) The trial court reasoned that, based on the drug histories of Caldwell and Shannon, the bundling of the money, the positive canine scan, and the overwhelming smell of marijuana, coupled with the inconsistent statements regarding the origin of the cash, the Commonwealth proved a nexus between the seized cash and a violation of The Controlled Substance, Drug, Device

and Cosmetic Act (the Controlled Substance Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780–101 to –144. (*Id.*) Furthermore, the trial court found that, while Williams had an opportunity to prove that she lawfully acquired the money, her testimony was not credible and was self-serving, and, accordingly, she failed to prove ownership of the money. (*Id.* at p. 10.) The trial court concluded that because the Commonwealth proved a nexus between the money and illegal activity and Williams failed to meet her burden by proving lawful ownership of the money, the Commonwealth met its burden on the forfeiture petition. (*Id.*)

■ On appeal,[3] Williams essentially argues that the trial court's decision is contrary to law, because the Commonwealth failed to establish evidence of a nexus between the forfeited money and any illegal activity. Specifically, Williams argues that the trial court erred in failing to follow this Court's decision in *Collins*.

Section 6801(a) of the Forfeiture Act sets forth a list of property that "shall be subject to forfeiture," including controlled substances, drug paraphernalia, equipment, conveyances (vehicles and money). Section 6802(j) of the Forfeiture Act, 42 Pa.C.S. § 6802(j), provides, in pertinent part:

At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mort-

---

**3.** The Commonwealth Court's review of a forfeiture appeal is limited to determining whether the trial court's findings of fact are supported by substantial evidence and wheth-

er the trial court abused its discretion or committed an error of law. *Cmwlth. v. $6,425.00 Seized from Esquilin*, 583 Pa. 544, 554, 880 A.2d 523, 529 (2005) (*Esquilin*).

gage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

██ In forfeiture proceedings where money has been seized, the Commonwealth bears the initial burden of proving either (1) that the money was furnished in exchange for a controlled substance or represents the proceeds traceable to such an exchange, or (2) that the money was used or intended to be used to facilitate any violation of the Controlled Substance Act. *Commonwealth v. Three Hundred Ten Thousand Twenty Dollars ($310,-020.00) In United States Currency*, 894 A.2d 154, 161 (Pa.Cmwlth.2006). The Commonwealth must show, by a preponderance of the evidence, that a nexus exists between the money and a violation of the Controlled Substance Act. *Commonwealth v. One Thousand Two Hundred & Twenty Dollars Cash*, 749 A.2d 1013, 1016 (Pa.Cmwlth.2000), *appeal denied*, 563 Pa. 704, 761 A.2d 551 (2000). Preponderance of the evidence is tantamount to a "more likely than not" standard. *Commonwealth v. $11,600.00 Cash, U.S. Currency*, 858 A.2d 160, 163–64 (Pa.Cmwlth.2004). Forfeiture cases "are very fact sensitive." *Collins*, 8 A.3d at 384 (quoting *$310,020.00*, 894 A.2d at 161). Circumstantial evidence can be used to establish a party's involvement in drug activity to support a forfeiture. *Commonwealth v. McJett*, 811 A.2d 104, 110 (Pa.Cmwlth.2002), *appeal denied*,

574 Pa. 749, 829 A.2d 1158 (2003). The Commonwealth, however, need not produce evidence directly linking the seized property to illegal activity in order to show the requisite nexus. *Id.* If the Commonwealth proves by a preponderance of the evidence that the nexus exists between the money and illegal activity, the burden shifts to the claimant to establish that he owns the money, that he lawfully acquired it, and that it was not unlawfully used or possessed by him. Section 6802(j) of the Forfeiture Act. There is no requirement that drugs be present in order to subject seized property to forfeiture, and there is similarly no requirement that a criminal prosecution or conviction result from the incident. *Esquilin*, 583 Pa. at 556, 880 A.2d at 530.

Notably, our Supreme Court in *Commonwealth v. Marshall* held that evidence of a canine alert, the method of bundling money, and inconsistent statements about the origin of the money, are insufficient to establish a nexus between the money forfeited and illegal drug activity. 548 Pa. 495, 500, 698 A.2d 576, 578 (1997); *see also Collins*, 8 A.3d at 388 (holding that based on *Marshall*, evidence of canine alert, method of bundling money, and inconsistent statements regarding origin of money or planned use for money was insufficient to establish nexus); *Commonwealth v. Fontanez*, 559 Pa. 92, 739 A.2d 152 (1999) (holding that evidence of canine alert, large amount of cash, officer's knowledge of claimant's involvement with drugs, and claimant's subsequent arrest for transporting drugs in unrelated incident was insufficient for Commonwealth to establish nexus).

██ Here, the trial court relied on the totality of the circumstances to establish a nexus between the seized money and the illegal activity. Specifically, the trial court relied on the following evidence, collective-

ly, to establish the nexus: (1) Caldwell's and Shannon's past criminal histories; (2) Caldwell's involvement in a similar type of seizure in 2007; (3) the money's discrete placement in the vehicle; (4) Caldwell's and Shannon's convoluted stories about their trip and use of the rental car; and (5) the overwhelming smell of marijuana found on the money. (Trial court's Pa. R.A.P. 1925(b) opinion, attached to Appellant's Brief as Appendix B at p. 9.) The trial court considered this evidence in conjunction with the canine cash scan, the bundled money, and the inconsistent statements about the origin of the cash to determine that the Commonwealth sufficiently established a nexus between the seized cash and a violation of the Controlled Substance Act. (*Id.*) Under *Marshall* and *Collins*, however, we are compelled to hold that the evidence presented creates, at best, a mere suspicion of illegal drug activity.

Our Supreme Court in *Marshall* had an opportunity to consider a factually similar situation to the one at hand. In *Marshall*, a car was stopped for speeding, and, during a search of the vehicle, the officer observed cash stuffed between the seats. *Marshall*, 548 Pa. at 498, 698 A.2d at 577. The claimant in *Marshall* gave conflicting explanations as to the origin of the currency. *Id.*, 698 A.2d at 578. Neither drugs nor drug paraphernalia were found in the searched vehicle or on the occupants. *Id.* at 500, 698 A.2d at 579. The trial court found, among other things, that the claimant and driver gave inconsistent stories regarding the cash; the currency was bundled in a manner consistent with drug dealing; the money was found between the seat cushions; the drug-sniffing dog alerted on the cash; and the appellant's testimony was not credible. *Id.*, 698 A.2d at 578. Our Supreme Court held that the evidence presented showed nothing more than a "suspicion of a possible nexus" between the money and illegal drug activity. *Id.*, 698 A.2d at 579. Specifically, the Supreme Court opined that the method of bundling money, inconsistent explanations regarding the cash, and the positive canine scan are not enough to create a nexus. *Id.*, 698 A.2d at 579. Justice Nigro stated that "although [the money] was bundled in a way drug dealers have been known to arrange their money, such an arrangement is equally consistent with an innocent person's attempt to simply promote precision in the counting of lawfully obtained funds." *Id.*, 698 A.2d at 579. Similarly, with regard to the canine scan, the Supreme Court noted that a completely innocent person could be in possession of currency that was once involved in a drug transaction.[4] *Id.*, 698 A.2d at 579. The Supreme Court concluded that any remaining evidence of the residual presence of drugs was simply not enough to prove a nexus between the money and illegal drug activity, and, as a result, the Commonwealth failed to meet its burden. *Id.*, 698 A.2d at 579. Since then, the Supreme Court, in a discussion of *Marshall*, has noted that *Marshall* suffered from a drug nexus deficiency because no drugs or paraphernalia were found on or near the claimants and that the deficiency was controlling in the outcome. *See Esquilin*, 583 Pa. at 563, 880 A.2d at 534.[5]

---

4. Our Supreme Court has also recognized the unreliability of canine scans for illegal drugs because they do not indicate whether all of the cash or a single bill had been exposed to narcotics. *See Fontanez*, 559 Pa. at 97, 739 A.2d at 155.

5. We specifically highlight how *Esquilin* differs from the present case. *Esquilin* involved a seizure from men who were actually observed engaging in drug transactions. *Esquilin*, 583 Pa. at 559, 880 A.2d at 531–32. Additionally, both men had drugs in their possession at the time of the seizure. *Id.* at

Recently, this Court reached a similar result in *Collins*.[6] In *Collins*, an officer stopped a claimant on an interstate highway, and a consensual search of his vehicle revealed $9,000.00 in the glove box and driver's side door. *Collins*, 8 A.3d at 381. The claimant had a suspended driver's license and a previous conviction for possession of marijuana. *Id*. The claimant gave the officer a convoluted explanation regarding his intention to purchase vehicles at a car auction. *Id*. There were no controlled substances or drug paraphernalia found in the vehicle. *Id*. The trial court found a nexus between the money and the illegal drug activity based on the method of bundling the cash, the drug dog's alert, and the ion scan results. *Id*. at 383. This Court determined that due to the ion scan's irrelevance, the remaining evidence such as the claimant's previous drug conviction, inconsistent stories regarding the money, the planned use for the money, the bundling of the money, and the dog's alert was insufficient to establish the required nexus based on *Marshall*. Specifically, this Court noted:

> [t]he presence of a large sum of cash coupled with alleged inconsistencies or lack of information in a 'person's story' is [not] enough [for the Commonwealth] to meet its burden of proof. It is not against the law to carry cash, and a citizen has no obligation to speak to the police. The Commonwealth bears the burden of proving that the seized cash is

more likely than not related to illegal drug trafficking.

*Id*. at 388.

Williams argues that, because there is little or no difference between the case at bar and *Collins*, a similar result is in order. We agree. Based on our Supreme Court's decision in *Marshall* and our analysis in *Collins*, we feel compelled to follow the precedent set out in *Marshall*.

Here, the driver and passenger of the rental car were pulled over on a routine traffic stop. While both men have previous drug histories and Caldwell was involved in a similar incident in 2007, prior criminal history is not dispositive on the issue of whether money seized is related to illegal drug activity. *See Collins*, 8 A.3d at 388. Similarly, Williams, Caldwell, and Shannon were never charged with a crime in relation to the seized money, a probative fact in determining whether the money was indeed contraband subject to forfeiture. *Fontanez*, 559 Pa. at 95, 739 A.2d at 154. We may be more inclined to weigh Caldwell's prior related incident in 2007 more heavily if he had been claiming ownership of the cash, but it is Williams claiming ownership, not Caldwell. Moreover, no drugs or drug paraphernalia were found in connection with this seizure, making a nexus undoubtedly more difficult to establish.

Regarding Caldwell's and Shannon's inconsistent stories, any reliance the trial court places on such evidence is irrelevant based on established precedent. With re-

---

549, 880 A.2d at 525. Neither circumstance exists in this case.

**6.** We note that *Collins* provides a detailed discussion of the nature of the ion scan and its relation of casual contact with relative geographic areas. *Collins*, 8 A.3d at 388. More specifically, in *Collins* this Court determined that because ion scan results are based upon a comparison of the money tested and the casual contact levels for that specific state, an ion scan is not relevant or admissible unless it can be proven that the money has been circulated within the geographic area. *Id*. While the officers in the case before us performed an ion scan, the trial court correctly determined that the ion scan was irrelevant and inadmissible based on our holding in *Collins*. Accordingly, we need not discuss the ion scan in this appeal.

spect to the odor of marijuana, while it is likely that the odor creates a suspicion of a connection with drug activity, it is equally likely that the bag which held that money previously contained marijuana and the money itself is void of any illegal activity. It is further possible that the money was, at one point, involved in a drug transaction and landed in the hands of an innocent person just as Justice Nigro suggested in the *Marshall* case. The standard in forfeiture cases is preponderance of the evidence, which is tantamount to "more likely than not." *One Thousand Two Hundred & Twenty Dollars Cash,* 749 A.2d at 1016; *$11,600.00 Cash, U.S. Currency,* 858 A.2d 160 at 163–64. The odor of marijuana does not meet a preponderance of the evidence standard to establish a nexus because it is equally possible that the money seized was lawfully obtained. Furthermore, any remaining evidence is no more compelling than the evidence presented in *Marshall* and *Collins.*

Because the Commonwealth has failed to meet its burden of establishing a nexus between the seized property and illegal drug activity, the burden of proving lawful ownership of the property never shifted to Williams. Accordingly, it is of no consequence to this Court that Williams' testimony was inconsistent and found not to be credible by the trial court.

For the foregoing reasons, we reverse.

### ORDER

AND NOW, this 17th day of November, 2011, the order of the Court of Common Pleas of Monroe County, dated April 4, 2011, is hereby REVERSED.